GEORGE D. F. LAMBORN AND BETTY H. LAMBORN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lamborn v. Comm'r
Docket No. 22461-81.
United States Tax Court
T.C. Memo 1985-431; 1985 Tax Ct. Memo LEXIS 198; 50 T.C.M. (CCH) 835; T.C.M. (RIA) 85431; August 19, 1985. Winthrop Drake Thies, for the petitioners. Frances J. Honecker, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION "KORNER, Judge: Respondent determined deficiencies in income tax and additions to tax against petitioners for the years and in the amounts as follows: Additions to Tax
Calendar Years
Deficiency
Sec. 6651(a) [1]
1973
$74,821.69
$17,572.35
1974
22,851.67
3,167.57
Although a number of issues were raised by the pleadings, after concessions [2] there remain only two issues to be decided *200 by the Court: (1) Whether respondent erred in determining that petitioner George D. F. Lamborn's gross income was underreported by $50,623.44 for the year 1973 and (2) whether petitioners are liable for additions to tax under section 6651(a) for each of the years 1973 and 1974). *201 The case was submitted under Rule 122 on a set of stipulated facts and exhibits which are incorporated herein and form the basis of our findings of fact. FINDINGS OF FACT At the time of filing their petition herein, petitioner George D. F. Lamborn (hereinafter "petitioner" [3]) was a resident of Greenwich, Connecticut, and petitioner Betty H. Lamborn was a resident of Essex Fells, New Jersey. Petitioners filed their joint Federal income tax returns for the calendar years 1973 and 1974 with respondent at his Service Center in Holtsville, New York, on the cash basis. Their 1973 return was filed on December 16, 1974, after the expiration of an extension of time for filing to June 15, 1974. Their 1974 return was filed on November 10, 1975, after the expiration of an extension of time for filing to August 31, 1975. In 1973 and 1974, petitioner performed services as a registered representative pursuant to the rules of the New York Stock Exchange. He was a salesman for the commodities brokerage houses *202 of H. Hentz & Co., Inc. (hereinafter "Hentz") in 1973 and Hayden Stone, Inc. (hereinafter "Hayden Stone") in 1973 and 1974. In 1973, Hentz paid to petitioner commissions of $167,038 and Hayden Stone paid petitioner commissions of $96,328.33. All commission checks which petitioner received from Hentz and Hayden Stone during 1973 were made payable to him individually, as they were in prior and subsequent years. The total compensation paid to petitioner in 1973 by Hentz and Hayden Stone was $263,366.33. Fellscrest Corporation (hereinafter "Fellscrest") was incorporated in the State of New Jersey on November 29, 1968. Prior to 1973, its principal activity had been to own and operate a Cessna airplane. Said airplane was sold on November 6, 1972. During the year at issue, (a) the address for Fellscrest was the same as that of petitioner; (b) petitioner was the sole shareholder, officer and director of Fellscrest; (c) petitioner was Fellscrest's only designated employee; and (d) Fellscrest had fixed assets with a book value of $573.93. Under date of December 15, 1972, petitioner, in his capacity as president of Fellscrest, entered into an "employment agreement" with himself *203 as "employee" of Fellscrest. This agreement was effective between Fellscrest and petitioner only during the year 1973, and no other of similar agreement existed between petitioner and Fellscrest for prior or subsequent years. [4]
Petitioner's employment agreement with Fellscrest contained, inter alia, the following provisions which are deemed relevant here: 1. Petitioner was to work for Fellscrest on a full time basis. 2. While the parties to the agreement recognized that petitioner was currently serving as an employee of Hentz, and might in the future serve as an employee of other brokerage houses, it was agreed that petitioner would be considered as serving only "nominally" as an employee of such houses but would be in fact the employee of Fellscrest, whom he would be serving as an undisclosed principal. 3. Petitioner *204 was to be entitled to retain 20 percent of the gross commissions paid by his "nominal" employer to him, including any withholding made by such employer, and was then to remit the balance of 80 percent of such commissions to Fellscrest. 4. Fellscrest then agreed to pay petitioner 80 percent of the amounts paid by petitioner to it, "less lawful withholding." Thus, petitioner would ultimately receive 84 percent of the commissions paid to him by his outside or "nominal" employers. 5. Payments by Fellscrest to petitioner were to be made not less often than monthly. Petitioner was to be entitled to participate in fringe benefit programs established by Fellscrest, while at the same time being specifically allowed to participate in fringe benefits provided by his "nominal" employers. In 1973, Fellscrest set up both a pension plan and a profit sharing plan for the benefit of petitioner. The details of such plans are not disclosed in this record. Fellscrest did not enter into any contract or employment agreement with Hentz or Hayden Stone prior to or during 1973, or at any other time. Hentz and Hayden Stone were aware, however, of the agreement between Fellscrest and petitioner. *205 Petitioner attempted to have the two brokerage houses pay his commission checks directly to Fellscrest, but Hentz and Hayden Stone refused. After he received his commission checks from Hentz and Hayden Stone, petitioner would deposit the funds into his personal bank account and then draw checks payable to Fellscrest. The total amount petitioner paid by check to Fellscrest in 1973 was equal to about 77 percent of his gross commissions for that year. In his joint income tax return for 1973, petitioner disclosed the total of the above amounts of commission paid to him by Hentz and Hayden Stone, in the total amount of $263,366.33. From this total, petitioner then subtracted the amount of $202,493.75, labeling it as "income received as nominee for Fellscrest Corporation * * *." He thus reported the net amount of $60,872.58 as income from Hentz and Hayden Stone. He further reported the amount of $151,870.31 as compensation from Fellscrest, and thus reported a grand total of $212,742.89 as taxable compensation for 1973. The conduct of organizations which are members of the New York Stock Exchange, and their employees, is governed by the Rules of the New York Stock Exchange. Rule *206 345 of said Rules provides, inter alia, that no member or member organization of the New York Stock Exchange shall "employ any registered representative or other person in a nominal position because of the business obtained by such person." Rule 346 of said Rules also provides in pertinent part: Every registered representative or officer of a member or member organization shall devote his entire time during business hours to the business of the member or member organization employing him, and shall not at any time be engaged in any other business or be employed by any other corporation, firm or individual, or serve as an officer or director of another corporation, or own any stock, or have, directly or indirectly, any financial interest in any other member organization or any nonmember organization engaged in any securities, financial or kindred business without the prior written approval of the Exchange, or except as otherwise permitted by the Rules of the Board of Directors. * * * Fellscrest was never a registered representative or a member of the New York Stock Exchange. Petitioner's *207 activities as a registered representative during the year 1973 were substantially the same as in prior and subsequent years. Petitioners' income tax returns for 1973 and 1974 were prepared by a firm of independent certified public accountants, which also prepared and secured one extension of time for the filing of the 1973 return and two extensions of time for filing the 1974 return. During 1974, petitioner worked all but 48 days, and during 1975, he worked all but 30 days. [5]
Upon audit of petitioners' 1973 and 1974 returns, respondent determined that petitioner's method of reporting his commission income for 1973 was incorrect, and that the full amount of $263,366.33 received by him from Hentz and Hayden Stone during the year was reportable. Under the provisions of sections 61 and 482, respondent accordingly increased petitioner's taxable income by $50,623.44. Respondent further determined that petitioners had not shown that their failure to file their 1973 and 1974 returns within the time prescribed *208 by law was due to reasonable cause, and accordingly imposed additions to tax as provided by section 6651(a). OPINION 1. The Income Issue.
Under the provisions of sections 61(a) and/or 482, respondent determined and urges here that the entire amount of petitioner's commission income from Hentz and Hayden Stone was reportable by him for the year 1973, and that no amount should be recognized as the income of Fellscrest. Petitioners, on the other hand, urge that respondent's position under either of the above Code sections is erroneous, that the "employment agreement" between Fellscrest and petitioner was a substantial and bona fide arrangement whereunder Fellscrest undertook to provide petitioner's services to Hentz and Hayden Stone, and that the portion of petitioner's commission income retained by Fellscrest in the year 1973 was properly reportable by it. We will consider the section 61(a) issue first. The general rule of the income tax law has long been established that income is properly taxable to him who earns it. Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949); *209 Lucas v. Earl,281 U.S. 111 (1930); see United States v. Basye,410 U.S. 441, 449 (1973). It is also to be remembered that the determinations of respondent in his statutory notice of deficiency are considered to be presumptively correct, and the burden of proof is on the petitioners to show error in such determinations. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). We must hold in this case that petitioners have failed to carry their necessary burden of proof to show that respondent's determination was in error as to the taxation of the commission income received by petitioner from Hentz and Hayden Stone. Indeed, based upon what can be gleaned from the fully stipulated but scanty record herein, the strong indications are that respondent was entirely correct. The stipulated facts clearly show that Fellscrest, the purported "employer" of petitioner, was an empty corporate shell, with only nominal assets and conducting no business after disposing of its Cessna airplane in November 1972. It was completely under the control of petitioner, its sole shareholder, director, officer and "employee." It was not a member of the *210 New York Stock Exchange and had no right to conduct business there, through petitioner or otherwise. Its agreement with petitioner lacked any economic reality, and amounted to nothing more than an attempt by petitioner to divert part of his income, earned by his own efforts as the registered representative of Hentz and Hayden Stone, to his incorporated pocketbook. Fellscrest neither exercised nor could exercise any control over petitioner's actions in earning the income from Hentz and Hayden Stone, and its arrangement with petitioner had no apparent independent business purpose. It seems clear to us that this was a sham arrangement, lacking any economic reality or substance, and should be disregarded for income tax purposes. Cf. Jones v. Commissioner,64 T.C. 1066 (1975); Benningfield v. Commissioner,81 T.C. 408 (1983). Hentz and Hayden Stone, although apparently aware of petitioner's arrangement with Fellscrest, did not recognize such arrangement, refused to send petitioner's commission checks to Fellscrest, and continued to deal with petitioner only as an individual employee of theirs and not as agent or servant of Fellscrest. It is clear *211 that they recognized the inconsistency and conflict between petitioner's position as their exclusive full time employee and his alleged status as the employee and agent of Fellscrest. Cf. Johnson v. United States,698 F.2d 372 (9th Cir. 1982); Johnson v. Commissioner,78 T.C. 882 (1982), affd. without published opinion 734 F.2d 20 (9th Cir. 1984); Benningfield v. Commissioner,supra.
The Restatement of the Law of Agency (2d) (1958) (hereinafter "Restatement, Agency") states the following: § 147. Inference that Principal is a Party; Simple Contracts Unless otherwise agreed, a disclosed or partially disclosed principal is a party to a contract, if not negotiable or sealed, made by his agent within his authority. Comment: a. In transactions entered into by an agent on behalf of a disclosed or partially disclosed principal, it is ordinarily inferred that the principal is intended to be a party thereto; and unless the circumstances or the form of the contract indicate that the third person intends to deal only with the agent, the principal is a party. * * * [Emphasis supplied.] In view of the *212 restrictions of the New York Stock Exchange regarding members and their employees, quoted above in our findings, it is not to be inferred that Hentz and Hayden Stone intended to accept Fellscrest as a principal and deal with petitioner as Fellscrest's agent; we draw just the opposite inference, both from the New York Stock Exchange Rules as well as from the actions of Hentz and Hayden Stone. Even if we assume, arguendo, however, that petitioner could enter into a valid contract with Fellscrest and perform personal services for it as its employee and agent, the arrangement here must fail with respect to diverting petitioner's earnings from Hentz and Hayden Stone to Fellscrest. The applicable principles are well stated in Restatement, Agency, sec. 226: § 226. Servant Acting for Two Masters A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other. Comment: a. Independent service for two masters. Since one can perform two acts at the same time, it is possible for each act to be performed in the service of a different master, although ordinarily the control *213 which a master can properly exercise over the conduct of the servant would prevent simultaneous service for two independent persons. Likewise, a single act may be done to effect the purposes of two independent employers. Since, however, the relation of master and servant is dependent upon the right of the master to control the conduct of the servant in the performance of the service, giving service to two masters at the same time normally involves a breach of duty by the servant to one or both of them. A person, * * * may be the servant of two masters, not joint employers as to the same act, if the act is within the scope of his employment for both * * *; he cannot be a servant of two masters in doing an act as to which an intent to serve one necessarily excludes an intent to serve the other. * * * In the instant case, petitioner was the employee of Hentz and/or Hayden Stone both before, during and after 1973. His duties, responsibilities and activities were the same throughout. Among the requirements of his employment were the stipulations of the Rules of the New York Stock Exchange that he not be employed in a "nominal" position, that he devote his full time to his job, and *214 that he not be employed by anyone else without the prior written approval of the Exchange or as permitted by the Rules. His "employment agreement" with Fellscrest was a clear violation of all those requirements. In continuing his employment under such conditions with Hentz and Hayden Stone, therefore, we conclude that he necessarily abandoned and renounced his status as an employee and agent of Fellscrest. Restatement, Agency, sec. 119 provides in pertinent part as follows: § 119. Manner of Revocation or Renunciation Authority created in any manner terminates when either party in any manner manifests to the other dissent to its continuance or, unless otherwise agreed, when the other has notice of dissent. Comment: a. Even though the authority of an agent has been created by a sealed instrument, hisauthorityisrevokedorrenouncedby written or spoken words or otherconductwhich,reasonablyinterpreted,indicatesthat the principal no longer consents to have the agent act for him or that theagent no longer consents so to act. * * * [Emphasis supplied.] In conclusion, we hold that in 1973, petitioner *215 earned his commissions from Hentz and Hayden Stone as an individual and in his own name and right. Such commissions are accordingly taxable to him in full. Roubik v. Commissioner,53 T.C. 365 (1969). Having so concluded, we need not consider the alternative contentions of the parties with respect to the applicability of section 482 to the facts of this case. 2. The Delinquency Issue.
The parties have stipulated that petitioners' returns for both the years 1973 and 1974 were filed late, after the expiration of the statutory time for filing, section 6072(a), and after the expiration of extensions granted by respondent, section 6081. Respondent accordingly determined additions to tax under section 6651(a) with respect to these deliquencies and, as in the case of the first issue discussed above, his determination is presumptively correct, and the burden is upon petitioners to prove error therein. Neubecker v. Commissioner,65 T.C. 577 (1975); Rule 142(a). The burden was therefore upon petitioners to show that their failure to make timely filings was "due to reasonable cause and not due to willful neglect," within the meaning of the statute. *216 Other than pointing to petitioner's busy work schedule, petitioners have offered no acceptable reason to cause us to overturn respondent's determination. We have held repeatedly that a taxpayer is not excused from timely filing his return simply because he is busy at work. Dustin v. Commissioner,53 T.C. 491 (1969), affd. 467 F.2d 47 (9th Cir. 1972); Odend'hal v. Commissioner,80 T.C. 588 (1983), affd. and remanded on other grounds, 748 F.2d 908 (4th Cir. 1984). See also Demler v. Commissioner,T.C. Memo. 1966-117. We further note that the returns here in question were prepared by certified public accountants, and not by petitioners personally, which makes petitioner's excuse of a busy personal work schedule even less acceptable. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Among the issues raised by the pleadings, as amended, was petitioners' assertion of the bar of the statute of limitations with respect to respondent's determinations herein. This issue was the subject of petitioners' motion for summary judgment, filed herein on July 30, 1982, and denied by the Court, after hearing, on November 1, 1982. Nothing further appearing in the record nor in petitioners' briefs with respect to this issue, it is deemed to be abandoned. With respect to another issue raised by the pleadings -- the disallowance of a claimed casualty loss for the year 1973 -- the stipulation of the parties simply states that petitioners no longer contest respondent's determination, without more. In his opening statement to the Court, however, as well as on brief, petitioners' counsel has asked the Court to make a "determination" with respect to such issue on certain grounds. This we decline to do. We will only decide issues which are properly before us, and this issue has been withdrawn from contention by stipulation of the parties. In any event, there are no facts in this record with respect to the issue from which we could make any findings of fact or conclusions of law. Statements of petitioners' counsel to the Court, orally and on brief, do not constitute evidence. Rule 143(b).↩
3. Petitioner Betty H. Lamborn is involved herein only by reason of having filed a joint return with petitioner George D. F. Lamborn, and will not be referred to hereinafter.↩
4. So stipulated by the parties. The agreement itself provided, however, that it was to be effective for a term of ten months ending October 31, 1973, and thereafter from year to year unless either party gave notice of intention not to renew. The record herein does not disclose how the agreement was extended to December 31, 1973, and was then terminated.↩
5. So stipulated by the parties. The Court interprets these stipulated figures as not including days which were not normal working days, viz., Saturdays, Sundays and holidays.↩