**WAYNE FILM SYSTEMS CORPORATION,**
**Plaintiff,**

v.

**FILM RECOVERY SYSTEMS CORPORATION, et al.,**
**Defendants.**

**No. 84 A 807 (83 B 10803).**

United States District Court, N.D. Illinois, E.D.

May 14, 1986.

Shalom L. Kohn, Bryan Krakauer, Sidley & Austin, Chicago, Ill., Richard B. Ferrari,

Watkiss & Campbell, Salt Lake City, Utah, Mark Krum, Lord, Bissell & Brook, Chicago, Ill., for plaintiff.

Kent R. Carlson, Thomas J. Royce, Thomas J. Royce, Ltd., Chicago, for defendants.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This bankruptcy case is before us on a motion to withdraw reference pursuant to 28 U.S.C. § 157(d). The basic issue is whether there is bankruptcy jurisdiction over plaintiff's adversary complaint.[1] If not, we must then determine whether any alternative federal jurisdiction exists to entertain plaintiff's claim.

## FACTS

On September 1, 1983, an involuntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, was filed against one of the defendants in the instant proceeding, Film Recovery Systems Corp. ("FRS"). On September 29, 1983, the bankruptcy court converted the case to one under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. Subsequently, a trustee, also a defendant here, was appointed to administer FRS' estate. *See* 11 U.S.C. § 1104.

In the complaint of plaintiff Wayne File Recovery, Inc. ("Wayne"), it is alleged that throughout 1983 Wayne delivered raw silver base to FRS in order to have the base refined into pure silver. Wayne also entered into agreements with FRS to the effect that FRS would store and sell the refined silver on Wayne's behalf. Wayne alleges that FRS never returned the refined silver or paid Wayne for the refined silver which it sold on Wayne's behalf.

Also included as defendants in the complaint are B.R. Mackay & Sons, Inc. ("BRM"), Michael T. Mackay, Alvin Tolin, Fred Haynie, Silver Recovery Systems, Inc. ("SRS"), and various other defendants. Wayne alleges that BRM was one of FRS' two original shareholders, and that Mackay and Tolin were officers and directors of FRS. Mackay was also an officer and director of BRM, and Haynie was an officer of BRM. Wayne alleges that FRS was the initial refinery to which Wayne's raw silver base was sent, and that BRM then further refined FRS' product. Wayne states that it transacted business with BRM between 1981 and May 1983. Sometime between December 1, 1982, and February 28, 1983, Wayne claims that FRS ceased operating, and BRM took over the operation of FRS' business.

1. Plaintiff filed its adversary proceeding in the bankruptcy court before Judge Hertz. A group of defendants then filed a motion to dismiss; one of the grounds asserted was lack of bankruptcy jurisdiction. Evidently, plaintiff then moved for leave to withdraw reference of the matter from Judge Hertz, and Judge Hertz agreed that a district court judge should determine whether bankruptcy jurisdiction existed over plaintiff's claim. *See Wayne Films, Inc. v. Film Recovery Systems Corp.*, 84 A 807, Order (Bank.N.D.Ill. Aug. 13, 1984) (Hertz, J.). (Plaintiff may also be arguing that reference should be withdrawn from the bankruptcy court because plaintiff demands a jury for its claim.) It does not appear to us that a party need move in bankruptcy court for leave to move in the district court for withdrawal of reference of a matter. Under § 157(d), it is the district court which determines whether a matter should be withdrawn.

But the parties seem to have proceeded in district court as though by entering the Order of August 13, 1984, the bankruptcy court granted a motion to withdraw reference of the proceeding. We also appear to have proceeded under this erroneous assumption, because we did not ask the parties to brief the motion to withdraw reference, but rather, asked them to brief defendants' motion to dismiss the adversary proceeding. *See Wayne Films, Inc. v. Film Recovery Systems*, No. 84 A 807, Order (N.D.Ill. Nov. 27, 1984) (Grady, J.). Since we have never entered an order granting plaintiff's motion to withdraw reference, it is this motion to withdraw which is before us today.

Aside from these defendants' motion to dismiss, the trustee, who is also a defendant, has moved to dismiss plaintiff's complaint in the bankruptcy court. Because we never granted a motion to withdraw, technically, the trustee's motion is not before us either. It also appears that this motion was never fully briefed.

In any event, whether the motion before us today is a motion to withdraw or a motion to dismiss, the result is the same: plaintiff's complaint is dismissed for lack of jurisdiction. *See supra* at 53.

The complaint consists of ten counts. Count I is directed against FRS, the trustee, BRM, Mackay, Tolin and Haynie (and other defendants), and is based on breach of trust. Wayne claims that in 1983 it delivered raw silver base to FRS and BRM in trust and that the defendants did not return its silver.

Count II is directed against the same group of defendants and is based on conversion: Wayne claims that FRS and BRM received possession of Wayne's raw silver base and have converted it to their own use.

Count III, directed against the same group of defendants, is based on bailee negligence. As in Counts I and II, Wayne alleges that this group of defendants received Wayne's silver base and failed to preserve it.

Count IV alleges that if BRM did not receive Wayne's property, then FRS was an undisclosed agent of BRM when FRS dealt with Wayne. Additionally, Wayne claims that FRS was a mere shell, controlled by BRM, which ignored FRS' corporate status.

Count V is a conversion claim directed against a defendant alleged to have received Wayne's silver.

Count VI is captioned "partnership" and alleges that FRS, BRM, SRS and other defendants did business together as a partnership.

Count VII, captioned "merger," alleges that BRM's takeover of FRS in January 1983 constituted a merger of FRS and BRM. Wayne claims that BRM is the entity resulting from this merger, that BRM assumed all of FRS' obligations, and that "[t]he entity resulting from the merger of FRS and BRM is the true party to all dealings with Plaintiff which allegedly were with FRS subsequent to the merger." Complaint, Count VII, ¶ 75.

Count VIII is captioned "illegality of corporate purpose" and alleges that BRM,

Mackay, SRS, Tolin, Haynie and various other defendants controlled FRS, profited by FRS' activities, and caused FRS to engage in various illegal activities, including murder.

Count IX is a RICO [2] claim directed against all the defendants.

Finally, in Count X, Wayne requests that the court lift the automatic stay entered pursuant to 11 U.S.C. § 362 in order to permit Wayne to pursue Counts I through IX.

As relief, Wayne requests, among other items, the value of the raw silver base, $1 million in punitive damages, a declaratory judgment that the defendants cannot hide behind FRS' corporate shield, treble damages under RICO, and attorney's fees.

Stripping the complaint to its essence, Wayne, realizing that its debtor FRS has few assets, is attempting to extend liability to FRS' officers, directors and shareholders (the third-party defendants) under various theories of agency, merger, partnership and RICO enterprise. While FRS and the trustee are named as defendants, Wayne has asserted that it is really after the other defendants, and that FRS and the trustee should actually be plaintiffs in this action. *See* Memorandum Answering Motion to Dismiss of Defendant Trustee at 4. Wayne claims in Count X of its complaint that it does not seek to interfere with FRS' estate. Complaint, Count X, ¶ 89.

In a separate adversary proceeding, the Trustee also attempted to sue BRM on an alter ego theory. *Fahner v. B.R. Mackay & Sons, Inc.*, 84 A 1123 (83 B 10803). The trustee's complaint was dismissed without prejudice by Judge Hertz, because the only injury the trustee alleged in his complaint was injury to FRS' creditors, and a trustee cannot bring a suit on a cause of action belonging only to individual creditors. *Fahner v. B.R. Mackay & Sons, Inc.*, 84 A 1123 (83 B 10803), Order (Bankr.N.D.Ill. June 28, 1985) (Hertz, J.). We will discuss

**2.** RICO is the popular acronym for Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*

this principle of law in more detail, *infra* at 49–50, because it is this principle which establishes that bankruptcy jurisdiction is lacking here.

## DISCUSSION

### Bankruptcy Jurisdiction

#### Applicable Law.

The source of a federal court's jurisdiction over bankruptcy matters is 28 U.S.C. § 1334.[3] Subsection 1334(a) states that except as provided in § 1334(b), district courts[4] have jurisdiction "of all cases under title 11." A "case" is the bankruptcy case itself, that is, the case upon which all of the proceedings which follow the filing of a petition are predicated. Thus, § 1334(a) basically applies to "core" administrative matters. *See* L. King, 1 *Collier on Bankruptcy*, ¶ 3.01 at 3–20, 3–25 (15th ed. 1985). *See* 28 U.S.C. § 157.

■ Subsection 1334(b) states that district courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." A civil proceeding arising "under" Title 11 means a cause of action created by Title 11, or administrative matters involving no third party (that is, only the debtor and trustee). *Id.* at 3–22. *See In re Hartley*, 16 B.R. 777, 778 (Bankr.W.D.Mo.1982).

■ Matters "arising in or related to" a case under Title 11 are all matters having a sufficient effect upon the bankruptcy estate to warrant the exercise of jurisdiction. The test for this type of matter is whether the outcome of the proceeding could have an effect on the administration of the estate. *In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985); *Dore & Associates Contracting, Inc. v. American Druggists' Insurance Co.,* 54 B.R. 353, 356 (Bankr.W.D.Wis. 1985); *In re Bottles,* 20 B.R. 947, 950 (Bankr.C.D.Ill.1982).

■ Subsection 1334(d)[5] states that district courts have jurisdiction over "all of the property, wherever located, of the debtor as of the commencement of [the case under title 11], and of the estate." Thus, if a debtor owned the property involved in the matter at the time the petition was filed, then bankruptcy jurisdiction exists over that matter. "Property of the estate" includes the debtor's legal and equitable interests in property as of the commencement of the bankruptcy case, both tangible and intangible, including causes of action. *See* 11 U.S.C. § 541; 4 Collier ¶ 541.01 at 541–6.

In its memorandum in opposition to the defendants' motion to dismiss, Wayne relies on § 1334(d) as the basis of bankruptcy jurisdiction here, arguing that a finding that BRM and the other defendants are FRS' alter egos would make the defendants' assets FRS' assets. Plaintiff's Memorandum Answering Motion to Dismiss of Defendants B.R. Mackay & Sons, Inc., Michael T. Mackay, Alvin Tolin and Silver

---

3. In its complaint, which was filed July 12, 1984, Wayne alleged 28 U.S.C. § 1471 as the source of bankruptcy jurisdiction. Complaint, ¶ 17. Section 1471 was repealed and replaced by § 1334, effective July 10, 1984. Even if we looked to the underlying bankruptcy case, filed prior to July 10, 1984, § 1334(a), (b), (d) and not § 1471 applies. *See Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 660 (4th Cir.1985); *In re Atlas Fire Apparatus, Inc.,* 56 B.R. 927, 930–31 (Bankr.E.D.N.C.1986). In any event, subsections (a) and (b) of § 1334 are taken verbatim from § 1471(a) and (b), *Atlas,* 56 B.R. at 931; 1 *Collier,* ¶ 3.01 at 3–20, 3–21, and subsection (d) of § 1334 is a slightly modified version of § 1471(e), which in turn was similar in phraseology to the 1898 Bankruptcy Act. *See* 1 *Collier,* ¶ 3.01 at 3–11. Therefore, while we apply § 1334, we look to cases involving § 1471 for precedent.

4. The confusion that reigned as to bankruptcy jurisdiction after the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982) basically revolved around whether a bankruptcy court could hear certain issues, or whether only a district court could hear those issues. Section 1334 now replaces § 1471 and cuts back on the jurisdiction of bankruptcy courts as opposed to district courts. Here, we are concerned not with whether a bankruptcy court or district court should hear Wayne's claim, but whether *any* federal court has jurisdiction over the claim. Therefore, the fact that § 1471 referred to bankruptcy courts, while § 1334 refers to district courts, does not affect our ruling here.

5. Subsection 1334(c) concerns abstention and is not pertinent to this motion.

Recovery Systems, Inc. at 6–7. Additionally, Wayne argues that a finding of alter ego, merger or partnership liability would affect the administration of the estate, and, therefore, its claim relates to FRS' Title 11 case under § 1334(b).[6]

### Alter Ego Cases

Wayne's argument is supported by a district court case, *Steyhr Daimler Puch of America Corp. v. Pappas*, 35 B.R. 1001 (E.D.Vir.1983). In *Steyhr*, the plaintiff obtained a default judgment against a company in state court, shortly before the company filed for bankruptcy. The plaintiff filed a proof of claim in the bankruptcy case, but the bankrupt had few assets, so the plaintiff filed a diversity action against defendants which the plaintiff claimed were the bankrupt's alter egos and instrumentalities. In response, the defendants filed a counterclaim based on an alleged breach of contract and fraudulent trade practices by the plaintiff against the bankrupt. The plaintiff argued that only the debtor, and therefore the trustee, could assert the defendants' counterclaims, because under § 541 such claims belong to the bankrupt.

The court agreed that a determination that the defendants were the bankrupt's alter egos would benefit the bankrupt's creditors, and that the trustee had a duty to pursue the creditors' claims, since the assets of the alter egos might become the assets of the bankrupt estate. Therefore, it joined the trustee as a plaintiff. *Steyhr*, 35 B.R. at 1004.

This joinder might have destroyed the court's diversity jurisdiction, but the court found that the plaintiff's (and now trustee's) claim was "related" under § 1471. *See* note 3. The court found that the claim could affect administration of the bankrupt's estate: "Indeed if the plaintiff prevails, the interest of every creditor of the bankrupt and the bankrupt itself will be altered. Conceivably, the outcome of this suit could render the bankrupt solvent." *Steyhr*, 35 B.R. at 1005.

In contrast, a bankruptcy court found no bankruptcy jurisdiction in a similar case. *In re Curtina International*, 15 B.R. 993 (Bankr.S.D.N.Y.1981). There, the plaintiff creditor had delivered goods to the bankrupt and wanted to recover the value of these goods from the defendants, principals of the bankrupt, on an alter ego theory. The court noted that the plaintiff was not trying to recover assets on behalf of the estate or from the estate—rather, it sought only its own damages, from third-party defendants. Therefore, the trustee had no interest in any recovery the plaintiff might obtain, and the plaintiff's suit did not relate to the bankruptcy. *Id.* at 995.

Here, Wayne seeks to recover sums from third-party defendants on its own behalf. It does not request in its complaint that any recovery from those defendants be added to the estate and shared among FRS' creditors. It does ask for a declaratory judgment finding the defendants to be FRS' alter ego or principal, however, and in its memorandum, it argues, like the plaintiff in *Steyhr*, that its suit would in fact benefit the estate because the trustee could recover assets from the non-debtor defendants to pay creditor claims.

But as indicated *supra* at 48, the bankruptcy court in this case has already dismissed the trustee's adversary proceeding against BRM, finding that at least as pleaded, the only injury alleged in the trustee's complaint was injury to the creditors and that the trustee could not pursue such a cause of action. We believe that the court in *Steyhr* missed this important point when it found that a creditor's suit against non-debtor defendants on an alter ego theory relates to the underlying bankruptcy case: a trustee does not stand in the shoes of the bankrupt's creditors for all purposes. Rather, if a creditor has a claim against a third party, however that third party may be related to the bankrupt, the trustee has no standing to pursue that creditor's claim against the third party, even if the claim is common to many creditors. *See* 5 *Collier* ¶ 1106.01 at 1106–15. It is this principle

---

6.  Wayne cites § 1471(b), not § 1334(b), *but see*  *supra* note 3.

which precludes a finding that such a claim, owned only by a creditor or creditors, relates to the underlying bankruptcy case.

### Trustee Powers

A trustee stands in the bankrupt's shoes pursuant to § 541 and in the creditors' shoes pursuant to 11 U.S.C. § 544. Under § 541, he can pursue property and causes of action belonging to the bankrupt. Therefore, if a third-party defendant has harmed the bankrupt, the trustee—and only the trustee—can sue the third-party defendant. For example, the Fifth Circuit affirmed a district court's decision that § 362 prevented a plaintiff creditor from asserting state-law causes of action against a bankrupt's controlling person. *In re Mortgageamerica Corp.*, 714 F.2d 1266 (5th Cir.1983). Before the debtor filed for bankruptcy, the plaintiff obtained a judgment against it in state court. The plaintiff then attempted to sue the bankrupt's controlling person, based on the theory that the bankrupt had fraudulently transferred its assets to the controlling person. The bankruptcy court and district court held that the plaintiff could not sue the controlling person based on these allegations, because the cause of action for fraudulent transfer belonged to the bankrupt, not the creditor, under state law and § 541.

■ A fraudulent transfer case against a third-party defendant can also be pursued by a trustee on behalf of creditors under § 544(b). *See Carlton v. Baww, Inc.*, 751 F.2d 781, 786 (5th Cir.1985); *Matter of Daniele Laundries, Inc.*, 40 B.R. 404, 408 (Bankr.S.D.N.Y.1984); *Matter of Daniele Laundries, Inc.*, 34 B.R. 931, 935–36 (Bankr.S.D.N.Y.1983). But § 544 does not give a trustee the right to pursue *all* actions by creditors against third-party defendants who have some connection with the bankrupt. Under § 544(a), a trustee acts as a lien creditor or bona fide purchaser, allowing him to avoid certain transfers of the bankrupt's property or obligations incurred by the bankrupt. Subsection 544(b) also allows the trustee to avoid certain transfers of the bankrupt's interests voidable under state law. *See also* 11 U.S.C. § 548.

■ When a trustee is not claiming that property in the hands of a third party belongs to the bankrupt, or that a voidable transfer of the bankrupt's property to a third party occurred, the trustee has no standing to pursue a claim against the third party, since he would not be pursuing funds that belong in the bankrupt's estate. For example, in *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the Supreme Court held that a trustee had no standing under former Chapter X of the Bankruptcy Act to assert, on behalf of persons holding debentures issued by the bankrupt, claims of misconduct by an indenture trustee. *Id.* at 416, 92 S.Ct. at 1679. Since nothing in Chapter X gave trustees the power to collect money not owed to the estate, suit against the indenture trustee was left to the individual debenture holders. *Id.* at 428, 432, 92 S.Ct. at 1685, 1687.

In a Sixth Circuit case, a trustee sought performance of a liability insurance policy issued to a bankrupt on behalf of various creditors. *Cissell v. American Home Assurance Co.*, 521 F.2d 790 (6th Cir.) *cert. denied.* 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976). The court held that the trustee could not sue upon claims not belonging to the estate, even if they were assigned to him by creditors for convenience or other purposes. *Id.* at 792, *citing In re Petroleum Corp. of America*, 417 F.2d 929 (8th Cir.1969). The bankruptcy statutes, including § 544's predecessor, simply gave no power to the trustee to pursue such claims. *Cissell*, 521 F.2d at 793. The insurance policy gave only the injured creditors a property right in the liability policy, and, therefore, only those creditors could sue. *Id.* at 792. *See also In re Green Valley Seeds, Inc.*, 27 B.R. 34, 36 (Bankr.D.Ore.1982) (trustee cannot sue bankrupt's officers on alter ego theory because trustee does not have right to pursue individual creditor's claims); *In re T.E.*

*Mercer Trucking Co.,* 16 B.R. 176, 187 (Bankr.N.D.Tex.1981) (trustee had no standing to recover debts from bankrupt's partner, joint venturer or alter ego).

This is why Judge Hertz dismissed the trustee's claim against BRM: the trustee had not alleged a harm to the bankrupt under § 541, or a conveyance voidable under § 544.

This rule may upon first examination appear anomalous, because it tends to undermine the bankruptcy code's goal of equitable distribution among creditors. *See Mortgageamerica,* 714 F.2d at 1275. For example, here, if the defendants really are liable for FRS' debts under some theory such as alter ego or agency, then it would follow that Wayne's claim is not unique, and that FRS' other creditors could also recover debts owed by FRS from the defendants. If the trustee were permitted to sue the defendants on all the creditors' behalf, then the recovery from the defendants could be equitably distributed among all the creditors. Instead, under *Caplin* and current bankruptcy law, each creditor must sue the defendants separately, on a first-come, first-served basis.

This situation has not gone unobserved. In House Report Number 95–595 on the Bankruptcy Reform Act of 1978 (originally H.R. 8200), the Judiciary Committee of the House of Representatives stated that under the current law, a trustee has no standing to enforce creditors' claims against third parties, citing *Caplin.* It noted that proposed H.R. 8200 would change the law by permitting the trustee to pursue such claims. H.R.Rep. No. 595, 95th Cong., 2d.Sess. at 179, *reprinted in* 1978 U.S. Code Cong. & Ad. News, 5787, 5963, 6140. The Senate version of the same bill, S. 2266, did not include such a change, and the resulting statute, now § 544, omitted this change. *See* 124 Cong.Rec. 28, 284, 32400 (1978).

Since Congress expressly rejected the idea of changing bankruptcy law to allow a trustee to sue under these circumstances, it is clear that the trustee could not sue here, based on Wayne's allegations. Rather, Wayne's cause of action belongs only to Wayne, just as FRS' other creditors are the sole owners of their possible claims against the defendants.

**Effect of Lack of Trustee Standing**

■ We have seen that a trustee is not permitted to sue a non-debtor on behalf of the debtor's creditors because the estate is not considered to have sufficient interest in such a claim. And, like the court in *Curtina,* we do not see how the instant claim, brought by a creditor, has a sufficient relationship with FRS' underlying bankruptcy case to allow us to exercise bankruptcy jurisdiction.

Certainly Wayne's claim does not meet the requirements of § 1334(a), since it is an adversary proceeding involving third parties. *See supra* at 49. Nor is it a civil proceeding arising under Title 11 pursuant to § 1334(b), since it does not involve administrative matters and is not a cause of action created by Title 11. *See id.* The claim does not meet § 1334(d)'s property of the bankrupt requirement, because, as Judge Hertz found, the trustee cannot identify any debtor property owed by the defendants to FRS under § 541.

The only possible bankruptcy jurisdiction for Wayne's claim is § 1334(b)'s reference to matters arising in or related to Title 11 cases. But as indicated, *supra* at 49, this test involves a determination as to whether the plaintiff's claim could affect administration of the bankrupt's estate. Because Wayne's claim does not involve FRS' property, and could neither increase nor deplete FRS' estate, we agree with the decision in *Curtina* that bankruptcy jurisdiction does not exist over such a claim. While we stated, *supra* at 52, that it is perhaps illogical not to allow a trustee to sue a third party on behalf of a bankrupt's creditors, there are arguments to support such a lack of standing. Bankruptcy law has been developed to permit a bankrupt to either reorganize or liquidate. The interests involved are the bankrupt's need to start anew and the creditors' need for an equitable distribution of the bankrupt's assets. If a suit between a creditor and a

third party would not augment or decrease the assets of the bankrupt, then there is no need to involve the trustee or the estate in the creditor's claim. To recover on its claim, Wayne need only prove that it was harmed by third parties. The fact that other FRS creditors may (or may not) have been similarly harmed by the third parties does not affect the question of whether the suit against the third party would increase or decrease the size of the estate.

Therefore, we hold that no bankruptcy jurisdiction exists over Wayne's claim. This requires withdrawal of reference of the claim to the bankruptcy court.

### Federal Question Jurisdiction

Because we have determined that no bankruptcy jurisdiction exists over Wayne's claim, we must now examine whether any basis for federal jurisdiction remains. Wayne does not allege diversity; it does, however, claim federal question and pendant jurisdiction based on Count IX of its complaint, the RICO claim.

In their Rule 12(b)(6) motion to dismiss,[7] BRM, Mackay, Haynie, Tolin and SRS argue that Count IX fails to state a claim. We agree. We recently went into great detail as to the sort of allegations required for a sufficient civil RICO claim. *Jernryd v. Nilsson,* No. 84 C 7551, Memorandum op. at 9–18, 28–32 (N.D.Ill. Nov. 6, 1985) (Grady, J.). A starting point is an allegation that the defendants have committed two or more predicate offenses. Count IX of Wayne's complaint fails to allege any predicate offenses. By incorporating preceding paragraphs, Complaint ¶ 79, Wayne is apparently trying to use allegations of illegal activity made in ¶ 26 of the complaint as its RICO predicate offenses allegation. *See* Plaintiff's Memorandum Answering Motion to Dismiss of Defendants B.R. Mackay & Sons, et al. at 13. Included in ¶ 26 are various activities which can constitute predicate offenses under § 1961, including murder, mail and wire fraud (18 U.S.C. §§ 1341, 1343) and interstate trans-

portation of stolen property (18 U.S.C. §§ 2314–15). But none of these conclusory allegations meets the notice requirement of Rule 8 of the Federal Rules of Civil Procedure, and the fraud allegations certainly do not meet the requirement of particularity of Rule 9(b) of the Federal Rules of Civil Procedure. *See Ray v. Karris,* 780 F.2d 636, 644 (7th Cir.1985). At a minimum, under Rule 8, Wayne must allege who was murdered, what goods were stolen and received, and the nature of the scheme to defraud. Under Rule 9(b), Wayne must additionally identify the time, place and content of the fraudulent representations and who made them. Wayne must also delineate which defendant committed which illegal act; who received income from which predicate offenses; and how that income was invested in an enterprise (apparently an association-in-fact) under § 1962(a), since that is the subsection of § 1962 which Wayne is apparently claiming the defendants violated.

■ But more fundamentally, we fail to discern from these conclusory allegations how Wayne was injured in its business or property by reason of the defendants' alleged RICO violation, as required under § 1964(c). *See Jernryd,* Memorandum op. at 28–32. Wayne has only alleged generally that is has been damaged, Complaint ¶ 84, but has not alleged how, since it has not linked the loss of its raw silver base to any of the defendants' illegal activities. *See id.* at ¶ 85.

Therefore, this case is dismissed for lack of subject matter jurisdiction. The trustee and FRS are dismissed from this claim because Wayne seeks no recovery from them, and to the extent it does, Wayne has already filed a proof-of-claim in the bankruptcy case. If Wayne wishes to pursue a claim against FRS aside from its proof-of-claim, that claim is barred by § 362, and we see no reason to lift the stay at this time. If Wayne wishes to pursue the question of lifting of the stay in order to sue FRS, it

---

**7.** Since we have withdrawn reference, we may now examine the merits of this fully briefed motion.

should make an appropriate motion in the bankruptcy court.

Since the claims against the third-party defendants do not involve FRS' bankruptcy, Wayne would not need relief from the stay in order to pursue those claims, making Count X superfluous. Because we have no bankruptcy, federal question or diversity jurisdiction, the rest of the complaint against the third-party defendants is dismissed without prejudice. Should Wayne attempt to remain in federal court by amending its RICO claim, we will then examine defendants' other grounds for dismissal, such as abstention, along with any other arguments they may raise as to the amended complaint.

## CONCLUSION

The motion to withdraw reference of this matter from the bankruptcy court is granted, and plaintiff's complaint is dismissed without prejudice. Plaintiff has until June 5, 1986, to amend its complaint to allege a basis for federal jurisdiction over its claim. If plaintiff does not file such an amended complaint by June 5, 1986, its complaint will be dismissed with prejudice as to refiling a claim against the third-party defendants in federal court, but without prejudice as to refiling a motion to lift the stay as to FRS in bankruptcy court, or filing a claim against the third-party defendants in state court. If plaintiff does file an amended complaint in district court against the third-party defendants, defendants have until June 26, 1986, to answer or otherwise plead.