Herbert W. DUSTIN and Kathleen C.
Dustin, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

No. 25695.

United States Court of Appeals,
Ninth Circuit.

Aug. 1, 1972.

Rehearing Denied Nov. 8, 1972.

Walter G. Schwartz (argued), San Francisco, Cal., for petitioners-appellants.

Gordon Gilman, Atty. (argued), Meyer Rothwacks, Crombie J. D. Garrett, Richard S. Halberstein, Attys., Johnnie Walters, Asst. Atty. Gen., K. Martin Worthy, Chief Counsel, IRS, Washington, D. C., for respondent-appellee.

Before MERRILL, BROWNING and KILKENNY, Circuit Judges.

MERRILL, Circuit Judge:

Herbert W. Dustin, the taxpayer,[1] appeals from a decision of the Tax Court, 53 T.C. 491 (1969), upholding the Commissioner's assessment of deficiency in income tax for 1961 in the amount of $4,286.77 and addition to tax of $383.76 for late filing of the 1961 tax return.

### BAD-DEBT DEDUCTION

With a Mr. and Mrs. Leswing, taxpayer in 1958 entered into a partner-

---

1. Taxpayer's wife, Kathleen C. Dustin, was a party to the proceedings only be-

cause she signed a joint return with taxpayer for 1961.

ship, known as Century Schoolbook Press, for the purpose of publishing textbooks for submission to and adoption by the California school system. Taxpayer was a limited partner, and received a percentage interest in exchange for cash. During 1960 and 1961 loans to the partnership were made by taxpayer, and by the end of 1961 the unpaid balance amounted to $7,224.67. On his 1961 income tax return taxpayer deducted this amount as a bad debt loss. The deduction was disallowed by the Commissioner and the disallowance was upheld by the Tax Court on the ground that taxpayer had not proved that debt had become worthless during 1961. Internal Revenue Code of 1954, § 166(a) (1), 26 U.S.C. § 166(a) (1).

At the close of 1961 the partnership, Century, was without doubt in bad shape financially. Between the date of its formation and the end of 1961 Century had submitted six books to the California Board of Education for adoption. Four had been rejected prior to 1961. In 1961 two of the rejects were resubmitted. Two new books, including one for which the partners entertained particularly high hopes, also were submitted. In November, 1961, Century was notified that all books submitted had been rejected by the curriculum commission which recommends to the Board. During each year of its existence Century had sustained a loss. (It received some proceeds during this period from the sale of books directly to local school boards.) At the end of 1961 it had assets of approximately $6,500 (readily realizable value) against liabilities of approximately $27,500, exclusive of partners' loan and capital accounts.

Century was, nevertheless, able to continue in business until dissolution of the partnership in 1964. Its debts were paid and it enjoyed profits after 1962. Its unhappy condition at the end of 1961 was not unusual in this publication business—a publisher might suffer losses for several years before enjoying a profit.

■ Taxpayer had made no effort to collect his debt at the end of 1961. While he need not necessarily have gone so far as to initiate legal actions, he does have the burden[2] of establishing that such an action, when considered in the light of objective standards,[3] would in all probability have been entirely unsuccessful.[4] Treas.Reg. § 1.166–2(b), 26 C.F.R. § 1.166–2(b).

Century had never been involved in any litigation and had no outstanding judgments against it; it had never defaulted on any of its obligations and had not been forced into bankruptcy or receivership. Its creditors were patient and were not pressing at the end of 1961. During that year Century had repaid a portion of a loan from one bank, had obtained and repaid a loan from a second bank and, at the end of the year, had obtained a second loan from the second bank. Taxpayer himself served as endorser on loans into 1962, showing on his financial statement an asset value of $17,000 in the partnership. Some work was begun in 1961 on a book which was

2. *See* Los Angeles Shipbuilding & Drydock Corp. v. United States, 289 F.2d 222, 227 (9th Cir. 1961) ; Greer-Robbins Co. v. Commissioner of Internal Revenue, 119 F.2d 92, 93 (9th Cir. 1941) ; Fox v. Commissioner of Internal Revenue, 50 T.C. 813, 821–822 (1968), aff'd, by order, on Tax Ct. opinion, 25 A.F.T.R.2d 70–891 (9th Cir. March 9, 1970) ; 5 J. Mertens, The Law of Federal Income Taxation § 30.79 (1969).

3. *See* Fox v. Commissioner of Internal Revenue, 50 T.C. 813, 822–23 (1968), aff'd, by order, on Tax Ct. opinion, 25 A.F.T.R.2d 70–891 (9th Cir. March 9, 1970) ; Treas.Reg. § 1.166–2(a), 26 C.F.R. § 1.166–2(a) ; 5 J. Mertens, *supra* note 2, § 30.29 ; Ohl, The Deduction for Bad Debts : A Study in Flexibility and Inflexibility, 22 Tax Lawyer 579 (1969) ; cf. Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 292–293, 66 S.Ct. 120, 90 L.Ed. 78 (1945).

4. *See* Los Angeles Shipbuilding & Drydock Corp. v. United States, 289 F.2d 222, 228 (9th Cir. 1961) ; 5 J. Mertens, *supra* note 2, §§ 30.28, 30.79 ; Ohl, *supra* note 3, at 580.

ultimately adopted by the California Board of Education for use in the California schools.

In our judgment these facts serve to support the Tax Court's determination that taxpayer did not establish that the debt in 1961 was wholly worthless.[5]

## EXPENSES INCURRED IN SECURING BROADCAST LICENSE

■ Taxpayer in 1961 was a shareholder in a subchapter S small business corporation, Capitol Broadcasting Company. In December, 1960, Capitol entered into an agreement to acquire the stock of KGMS, Inc., owner and operator of a radio broadcast station in Sacramento, California. The agreement was subject to the consent of the Federal Communications Commission. During 1961 Capitol incurred expenses of $12,460 for legal fees and other expenses in connection with transfer of the control of the KGMS broadcasting license. Of this sum taxpayer, in his 1961 return, deducted his proportionate share as ordinary and necessary business expense. He subsequently conceded that $1,500 of the total expenses of the transfer was properly not deductible but should be capitalized as an acquisition cost. He maintained, however, that he was entitled to deduct his share of the remaining expenses of $10,960 which he attributed to the FCC's holding of a hearing on the matter. This deduction was disallowed by the Commissioner and the disallowance upheld by the Tax Court on the ground that all such transfer expenses must be capitalized as part of the cost of acquisition of the station, a capital asset. Internal Revenue Code of 1954, § 1221, 26 U.S.C. § 1221.

The Commissioner here points out that it is well-established that the costs of obtaining a radio or television license (or the stock of companies controlling such licenses) are costs of obtaining capital assets and thus are not deductible as ordinary and necessary business expenses. KWTX Broadcasting Co., Inc. v. Commissioner of Internal Revenue, 31 T.C. 952, aff'd per curiam, 272 F.2d 406 (5th Cir. 1959); Radio Station WBIR, Inc. v. Commissioner of Internal Revenue, 31 T.C. 803 (1959). To the extent of the $1,500 conceded to be acquisition cost, taxpayer recognizes the general validity of this rule.

As to the balance, however, taxpayer contends that the expenditure should be treated as an allowable deduction since it does not fall under Treas.Reg. § 1.-263(a)-1, 26 C.F.R. § 1.263(a)-1:

"(a) * * * no deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterment made to increase the value of any property or estate * * * "

Taxpayer asserts that the expenses in issue should be deductible because they failed to enhance the value of the broadcast license. In this he mistakenly treats the license as having already been acquired. The Tax Court stated in response to taxpayer's argument:

"The petitioners are misled in their reliance on the above-quoted regulations, for a careful reading of them will reveal that the term 'made to increase the value of any property' is the predicate of the term 'permanent improvements or betterments' and not of the term 'new buildings.' Here, we are dealing with expenditures incurred for the acquisition of additional capital assets (the stock of KGMS, Inc., with the attendant control of the

---

5. The Tax Court seems to suggest that a debt, even though not collectible to any extent today, may still not be rendered worthless if there be hopeful prospects for future payment. Taxpayer protests that this requires him to be an incorrigible optimist. Such a rule could well require a creditor at his peril to determine the degree to which he can afford to be optimistic and could subject the determination of a debt's worthlessness to uncertain and perhaps subjective standards. We need not reach these aspects of the problem, however.

license) and not with expenditures made to improve or better property already owned." 53 T.C. at 505.

We agree. The expenditures connected with the acquisition of the broadcast license were no less capital in character because they did not themselves contribute additional and specific financial value to the license being sought. The important fact is that the expenditures were made for the purpose of acquiring a capital asset. *See* 4A J. Mertens, The Law of Federal Income Taxation § 25.20 (1966).

Taxpayer next contends that the sums in question were allowable deductions since they were extraordinary costs not normally to be expected; they were rendered necessary, he says, because of the administrative hearing held when the Commission unexpectedly raised questions about the overlap of signals between KGMS and radio stations in San Francisco and Modesto in which the owners of Capitol held controlling interests. Taxpayer relies on Rankin v. Commissioner of Internal Revenue, 60 F.2d 76, 78 (6th Cir. 1932), to the effect that "where the costs arising from an unexpected contingency are * * * disproportionate to what is normally to be expected * * * they should not be capitalized as a part of the improvement."

We do not feel that such a rule can be applied here. The extent of investigations conducted by the Commission, whether relating to issuance of new licenses or the transfers of old, will depend on the facts of the particular case as viewed by the Commission. That it may probe deeper than was anticipated can hardly be characterized as an unexpected contingency. It will in each case probe as deeply as appears needful and the resulting expenses incurred by one seeking the broadcast license will in any case be a necessary part of the cost of acquisition.

## ADDITION TO TAX

■ The Commissioner imposed a 25 per cent addition to tax in the sum of $386.76 (based on the difference between taxpayer's payments of estimated tax and the actual tax due) pursuant to § 6651(a) of the Internal Revenue Code, 26 U.S.C. § 6651(a), for taxpayer's failure to file a timely return for 1961 (5 per cent penalty for each month with a maximum of 25 per cent). Taxpayer, a certified public accountant, contends that he had under Treas.Reg. § 301.-6651–1(a) (3), 26 C.F.R. § 301.6651–1(a) (3) made a showing of reasonable cause for filing his tax return six months late: He was busy getting out returns and performing other services for his clients. The Tax Court held that he could have been expected in the exercise of "ordinary business care and prudence * * * not [to] take on such a load that he could not fulfill his own legal obligations within the required time." 53 T.C. at 507. We agree. *See* Edwards v. United States, 375 F.2d 862, 864 (9th Cir. 1967); Eustis v. United States, 409 F.2d 228 (9th Cir. 1969); Logan Lumber Co. v. Commissioner of Internal Revenue, 365 F.2d 846, 854 (5th Cir. 1966).

The fact that taxpayer had secured extensions in five or six prior years suggests to us not that he had a right to another (as he would have it) but, rather, that the Commissioner's beneficence had understandably and properly reached its limit. A need for such extensions in the past should have put taxpayer on the clearest notice that he would have to reserve more time for his personal duties.

Judgment affirmed.