Edward J. HOLLAND, Jr., Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 83–1060.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1984.

Decided Feb. 29, 1984.

Hallison H. Young, Stanley H. Pitts, Patmon & Young, Carol Evans (argued), Detroit, Mich., for petitioner-appellant.

Kenneth W. Gideon, Chief Counsel, I.R.S., George M. Sellinger, Washington, D.C., Glenn L. Archer, Jr., Michael L. Paup (argued), Tax Div., Dept. of Justice, James F. Miller, Richard Farber, Washington, D.C., for respondent-appellee.

Before MARTIN, CONTIE, and WELLFORD, Circuit Judges.

PER CURIAM.

Taxpayer Edward Holland, Jr. challenges the Tax Court's refusal to allow him a $50,000 business bad debt deduction for a loan that he made to his own company. *See Tax Ct. Memo Dec.,* P.H. ¶ 82,428 (1982).

Holland is a song writer and record producer. At all times relevant to this case, he was also president and sole shareholder of Hot Wax Records, Inc., a corporation formed for the production of musical recordings. First incorporated in 1968, Hot Wax experienced numerous financial difficulties throughout its life and was finally dissolved in 1976. As president of the corporation, Holland was entitled to receive a salary. However, because of the company's financial problems, Holland's salary was never actually paid to him but instead accrued on the corporate books. In 1973, the taxable year at issue here, Holland's purported salary was $15,000.

Between 1968 and 1973, Holland from time to time advanced money to the company, either as unsecured loans or capital investments. By 1973, these outstanding advances amounted to about $100,000. In February 1973, the company obtained a six-month, $48,761.51 promissory note from a Detroit bank. In August, the note was renewed with interest, but also with new security, namely one of Holland's own certificates of deposit. On December 6, 1973, the bank foreclosed on the note and used the proceeds of Holland's certificate of deposit to pay off the note and accumulated interest for a total of $50,051. Subsequently, Holland claimed the $50,051 payment as a business bad debt deduction on his 1973 personal income tax return pursuant to I.R.C. § 166(a). The Commissioner disallowed the deduction and assessed a deficiency of $5,238.02. The Tax Court upheld the Commissioner's decision, finding that the debt was not a business bad debt. The Tax Court also refused to allow Holland to take a nonbusiness bad debt deduction (deductible only as a short-term capital loss) for the loss in 1973 because Holland had failed to prove that the debt had become totally worthless in that year. On appeal, we affirm.

■ Initially, we note that decisions of the Tax Court on factual issues are not reversible unless clearly erroneous. *Ten-*

nessee Securities v. Commissioner, 674 F.2d 570, 573 (6th Cir.1982), citing Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). In United States v. Generes, 405 U.S. 93, 92 S.Ct. 827, 31 L.Ed.2d 62 (1972), in a fact situation almost identical to this one, the Supreme Court held that a bad debt can qualify as a business bad debt only if the taxpayer's dominant motivation in making the loan to his employer, id. at 103, 92 S.Ct. at 833, was to protect his business interest as an employee of the company (i.e., his salary) and not his investment interest in the company. Id., at 101, 92 S.Ct. at 832. See. also Tennessee Securities, supra, at 575.

At trial, the taxpayer claimed that his dominant motivation in providing security for Hot Wax's $48,000 promissory note was to protect his salary as an employee of the company. Such self-serving declarations need not be given much weight. See Generes, supra, 405 U.S. at 106, 92 S.Ct. at 834. Moreover, an examination of the financial considerations at stake casts substantial doubt on Holland's claim. Holland admitted that he had never actually been paid a salary by Hot Wax. Holland also admitted that he had invested $100,000 of his own money in the firm over the past three years. Given these facts, it seems far more likely that Holland guaranteed the note in an effort to protect his very real investment in the company and not his nebulous interest in a phantom salary. And certainly we cannot hold that the Tax Court was clearly erroneous in reaching the same conclusion.

The Tax Court also held that Holland could not deduct this transaction as a nonbusiness bad debt in 1973 because he failed to show that the debt had become "totally worthless" in 1973 as required by Treas.Reg. § 1.166–5. Holland is correct when he states that as guarantor of the loan, once he made good on the loan, he took the position of the original creditor and could claim a bad debt deduction when that debt became worthless. Putnam v. Commissioner, 352 U.S. 82, 85–86, 77 S.Ct. 175, 176–177, 1 L.Ed.2d 144 (1956). None-

theless, as guarantor, he was still required to prove that the debt had indeed become worthless, and worthless in the year for which the deduction was claimed. "Generally this burden is met by showing that some identifiable event occurred during the course of the year which effectively demonstrates the absence of potential value. . . . The unsupported opinion of the taxpayer alone that the debt is worthless will not usually be accepted as proof of worthlessness." Dustin v. Commissioner, 53 T.C. 491, 501–02 (1969), aff'd, 467 F.2d 47 (9th Cir.1972) (citations omitted in original). In this case, Holland could point to no particular fact or circumstance which showed that the debt had become worthless. The debt itself was collected by the bank on December 6, 1973. Holland offered no evidence concerning the financial condition of his company as of that date, and no explanation of why future income from the company, even if operating at a loss, would not be available to pay back the debt. We also note the very short period between the time the debt was collected, December 6, and the end of the taxable year. Common sense indicates that, short of a total collapse, twenty-six days would not ordinarily be a long enough interval in which a creditor could reasonably conclude that he would never be repaid. For all these reasons, we find the Tax Court was justified in concluding that the taxpayer failed to prove the debt had become totally worthless in 1973 and, therefore that the debt was not deductible even as a nonbusiness bad debt.

Accordingly, the decision of the Tax Court is affirmed.

WELLFORD, Circuit Judge, concurring in part and dissenting in part.

I agree completely with the majority in its well-expressed opinion that the loss, which was claimed by the taxpayer in 1973, was a nonbusiness bad debt deduction.

I would, however, hold that he could deduct this nonbusiness bad debt as "totally worthless" in the calendar year 1973. The facts in Dustin v. Commissioner, 53 T.C. 491 (1969), aff'd, 467 F.2d 47 (9th Cir.1972), are

very different from the facts in this case as to the worthlessness of debt in the year claimed. In *Dustin,* for instance, the court of appeals noted that in the year after the claimed worthlessness of the partnership debt there, the partnership's "debts were paid and it enjoyed profits." 467 F.2d at 48. Further, it was pointed out that its "creditors were patient and not pressing.... [I]t had obtained and repaid a loan from a second bank and, at the end of the year, had obtained a second loan from the second bank." *Id.* Finally, Dustin himself showed a net "asset value of $17,000 in the partnership" the year after the debt was charged off as worthless against that same partnership. *Id.*

In contrast to *Dustin,* Holland's corporation, Hot Wax Records, Inc., as of the fiscal year ended April 30, 1973, showed a loss in excess of $185,000 with accumulated net operating loss deductions exceeding $1,360,-000. In prior tax years it had suffered and reflected operating losses of nearly $1,000,-000 and over $320,000, respectively. The capital stock in the corporation was only $2,000. Its major assets were advances to artists ($271,000 approximately), a "receivable from stockholder and employee"—Holland himself ($58,500)—and an "inter-company payable" ($109,000 approximately). Current liabilities, among others, included $541,000 in "advances from distributors" and $104,000 in accrued royalties and fees payable as of April 30, 1973. In sum, the corporation was in an extreme deficit position of over $489,000 as of April 30, 1973, and had reflected substantial losses over at least the prior four operating years.

Holland described the corporation as "always in a tight cash flow problem"; he claimed the deduction because of its "inability to pay" and "on the advice of my counsel, my tax lawyer." He testified that he claimed the loss after paying off the bank loan as guarantor based on the attorney's "information," since the debt was worthless. He conceded that he did not sue his corporation or attempt to collect the debt, "knowing obviously that the company cannot pay." It was unfortunate that taxpayer or his attorney did not present corporate

fiscal year returns for the period ending April 30, 1974, or as of December 31, 1973, but I would not hold this to be fatal to taxpayer's claiming an evident worthless debt as of the end of 1973.

Holland conceded that the corporation was not dissolved during 1973, but said it did "not really" continue any business after that time. The advances to artists, he testified, could not be recouped in 1973 (or at any time), none of the assets had any recognizable real value, and finally, he testified, "at that time [1973], it was nothing, you know. There was nothing really there to do anything with." This is a prima facie showing, it seems to me, not rebutted by the government in any respect, that taxpayer should be entitled to claim the nonbusiness bad debt loss of $48,761.51, to the extent allowable in 1973.

I would reverse the Tax Court on that issue accordingly.