In re NANODATA COMPUTER CORPO-
RATION, f/k/a Nanodata
Corporation, Debtor.

INTELLITEK COMPUTER CORPORA-
TION, f/k/a Nanodata Computer
Corporation, Plaintiff,

v.

KOLLMORGEN CORPORATION, Space
Circuits Limited and 437492 Ontario
Limited, Defendants,

and

United States of America, Intervenor.

Nos. CIV–85–1172E, CIV–85–1199E.

United States District Court,
W.D. New York.

May 13, 1987.

Robert A. Weiner, New York City, for plaintiff.

Lawrence I. Weinstein, New York City, for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

These actions represent two procedural facets of the same problem. At root are

1. Because default judgments were entered against Space Circuits Limited and 437492 Ontario Limited on October 2, 1984 and February 7, 1985, respectively, Kollmorgen is the only active defendant in this matter. Accordingly further reference to the two defaulting defendants will not be made.

various claims by Nanodata Computer Corporation ("Nanodata") against Kollmorgen Corporation ("Kollmorgen") and Space Circuits Limited.[1] Initially, however, this Court must resolve questions of its own and the Bankruptcy Court's jurisdictions as well as any constitutional implications the finding of such might have. The dual nature of the proceedings results from the decision of United States Bankruptcy Judge McGuire in the underlying proceeding, *In Re Nanodata Computer Corp.* ("*In Re Nanodata*"), 52 B.R. 334 (Bankr.W.D. N.Y.1985) finding, *inter alia*, a lack of jurisdiction in the Bankruptcy Court and recommending that this Court abstain from further involvement in the case. Thus pending before this Court is both the appeal from *In Re Nanodata* and the original action which has been returned to this Court in light of Judge McGuire's decision.

This Court substantially agrees with Judge McGuire's thorough analysis and will highlight, rather than reiterate, pertinent points. Nanodata was at the commencement of this action a Delaware corporation with its principal place of business in Buffalo, N.Y. and formed for the manufacture and marketing of digital computers and related products. Kollmorgen, a New York corporation, supplies certain computer hardware and had dealings with Nanodata. On June 18, 1982 Nanodata filed a Chapter 11 Bankruptcy petition. On November 1, 1982 Kollmorgen filed a proof of claim against Nanodata. January 13, 1984 Nanodata filed its Complaint against Kollmorgen[2] which was amended December 28, 1984 and includes causes of action for breach of warranty, breach of contract, intentional misrepresentation, negligent misrepresentation and negligent supervision of a licensee. On February 28, 1984 Nanodata filed objections to the allowance of Kollmorgen's proof of claim which objections incorporated by reference the allega-

2. Kollmorgen answered the Complaint in March 1984, asserting lack of subject matter jurisdiction. In June 1984 Nanodata commenced an action in the Supreme Court of the state of New York asserting claims identical to those in the case at bar. Kollmorgen has answered in the pending state court action.

tions of the Complaint. Nanodata's reorganization plan, including the distribution of any proceeds of the lawsuit brought by Nanodata against Kollmorgen and Space Circuits Limited was confirmed by the Bankruptcy Court (Dkt. No. 84–1007M).

■ The question is whether this Court, or the Bankruptcy Court derivatively, has and should exercise jurisdiction over Nanodata's claims against Kollmorgen. Nanodata, preliminarily, asserts that this Court can avoid the more difficult questions of jurisdiction under the bankruptcy laws by finding diversity of citizenship between the parties. As a result of Nanodata's March 1985 $20 million acquisition of two corporations, it relocated its financial, operational and management center to Lexington, Ky. in July 1985. Diversity clearly was not present when this lawsuit began. Nanodata argues, plausibly, that this enormously expensive relocation obviously had nothing to do with this litigation and hence that there is no collusive manufacture of juris-

diction, and that the traditional rule that jurisdiction is to be determined as of the commencement of suit—*see e.g. Conolly v. Taylor*, 27 U.S. 556 (2 Pet.) 7 L.Ed. 518 (1829); *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1032 (2d Cir.1979),—should not apply. The point is interesting in theory but this Court is disinclined to overturn the substantial body of precedent supporting the traditional rule—particularly when the boundaries of the new rule proposed by Nanodata are left without rational articulation and limits. If this Court has jurisdiction over Nanodata's claims, such must arise under the federal bankruptcy laws.

■ Section 1334 of Title 28 codifies this Court's jurisdiction over bankruptcy and certain related cases.[3] The procedures by which a district court may transfer title 11 cases to a bankruptcy judge, and the manner of acceptance by the bankruptcy judge of such cases are set forth in 28 U.S.C. § 157.[4] These statutes were drafted in an

---

3. The statute provides:

"§ 1334. Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by

section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate."

4. § 157. Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

effort to resolve certain constitutional deficiencies in the Bankruptcy Act of 1978. *See Northern Pipeline Co. v. Marathon Pipe Line Co. ("Marathon")*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1981). *See generally In re Nanodata, supra;* Norton and Lieb, Jurisdiction and Procedure Under the 1984 Bankruptcy Amendments (Norton Bankr.L.Prac.Monograph 1985 No. 1) ("Norton"). Absent consent of the parties as provided in 28 U.S.C. § 157(c)(2), a bankruptcy court's power to hear and determine cases referred to it by the district court is limited to "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11". 28 U.S.C. § 157(b)(1). Core proceedings are defined

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined

as including but not limited to certain categories enumerated in subsection 157(b)(2). Although Nanodata would have this Court read such subsection in a declaratory sense so that any proceeding that arguably falls within one of the listed categories would come within the jurisdiction of the bankruptcy court, Judge McGuire correctly found that such listed categories must be read in light of the definition of core proceedings in subsection 157(b)(1). *In Re Nanodata, supra,* at p. 341.[5]

Nanodata asserts that its claims against Kollmorgen are core either as counterclaims under subsection 157(b)(2)(C) or as coming within the catchall provision

by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

5. Again, reference can be had to the analysis and authorities presented in Judge McGuire's decision. *See e.g.* fn. 23. In this Court's view the plain language of the statute supports the conclusion. It is noted that simply referring to the listed core proceedings would vest the bankruptcy court with enormously broad jurisdiction absent the limitation imposed by subsection 157(b)(1). This is precisely the constitutional problem addressed in *Marathon, supra. See also, Manville Corporation v. The Equity Security Holders' Committee, et al.,* 60 B.R. 842 at fn. 18 (S.D.N.Y.1986).

of subsection 157(b)(2)(O). Assuming, *arguendo,* that this is so, the question insofar as the jurisdiction *vel non* of the bankruptcy court is concerned (and the appeal from Judge McGuire's decision that he did not have jurisdiction) is whether the claims arise under title 11 or arise in a case under title 11. 28 U.S.C. § 157(b)(1). As Judge McGuire stated:

"Nanodata's litigation does not. In so concluding, this Court necessarily rejects Nanodata's argument that its litigation was pivotal to its reorganization plan and, therefore, should be viewed differently. Quite to the contrary, in this Court's view, the linchpin to deciding whether a cause of action arises under Title 11 or arises in a case under Title 11 is the underlying nature of the cause of action itself and not merely the importance of that cause of action to the debtor or its creditors." *In Re Nanodata, supra,* at p. 342.[6]

In fact, an interpretation of the statute requiring that core proceedings must either arise under or arise in, coupled with the finding that the present matters did not, effectively closes the possibility of jurisdiction in the bankruptcy court. The parties, however, and Judge McGuire, also directed some attention to "nexus" considerations. For example, Nanodata asserts the "strong federal bankruptcy interest" inherent in this action—both as it relates to potential bankruptcy court jurisdiction under the catchall provision of subsection 157(b)(2)(O) and as going more generally to the question whether this Court should abstain. As stated in its Memorandum of Law of May 31, 1985 at pp. 22–23,

"Nanodata is not suggesting that every action which in some fashion can be said to affect the debtor-creditor or equity security holder relationship is a core proceeding under Section 157(b)(2)(O). Instead, it is Nanodata's position that a state law cause of action which is *critical* to the adjustment of the debtor-creditor or equity security holder relationship effected in the underlying bankruptcy case is properly heard and determined by a bankruptcy court under Section 157(b)(2)(O). In essence, the cause of action must be of such substantial import to the debtor's reorganization efforts in the bankruptcy case to warrant its hearing and determination by the bankruptcy court. The mere fact that the successful prosecution of an action would increase the assets of a debtor's estate (and thereby indirectly benefit its creditors and equity security holders) is not sufficient to meet this test."

Elsewhere Nanodata attempts to distinguish this case, wherein supposedly the most significant asset of the bankrupt is a "multi-million dollar" breach of contract claim against a creditor which had filed a proof of claim, from *Marathon, supra,* wherein, assertedly, the claim was against a stranger to the underlying bankruptcy proceeding and was only peripherally related to the underlying proceeding. Nanodata Brief of November 1, 1985 at p. 35.[7] The crux of Nanodata's theory, however, is not the "peripheral" relationship of the party sued to the underlying proceeding but rather the dollar amount of the claim asserted. For, if the quantum of the claim *did* have a substantial impact on the reor-

---

6. Kollmorgen in its "Brief In Further Support Of Its Motion For Abstention * * *" persuasively provides the analytical framework to Judge McGuire's conclusion. Briefly, the phrase "arising under" can be analogized to its use in Section 2 of Article III to refer to an action which "necessarily involves application of a body of federal substantive law." *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 497, 103 S.Ct. 1962, 1973, 76 L.Ed.2d 81 (1983). The phrase "arising under" has been even more narrowly construed in 28 U.S.C. § 1331. *Id.* at 495–496, 103 S.Ct. at 1972. Proceedings "arising in a case under title 11" involve controversies over title to

estate assets. *Taylor v. Voss,* 271 U.S. 176, 46 S.Ct. 461, 70 L.Ed. 889 (1925).

7. The government also remarks that "the concept of a core matter may be infinitely expanded" and that "actions truly peripheral to bankruptcy proceeding * * * cannot be justified as being a core bankruptcy matter." It is remarkably vague however on the question of core/noncore delineation. *See* Brief For Intervenors United States of America January 3, 1986 pp. 37–39. As in *Marathon, supra,* 458 U.S. at p. 73, 102 S.Ct. at 2872, "[t]he flaw in [the intervenor's] analysis is that it provides no limiting principle."

ganization efforts, the peripheral nature of the adverse party would have little if any bearing. Moreover, to the extent "impact" and dollar amounts are the measure, the question becomes: What is the dividing line? Nanodata acknowledges that the mere increase in the assets of a debtor's estate is not sufficient to convey jurisdiction. It is difficult, however, to see any *real* distinction—other than quantum, an arbitrary guide as stated—between that postulate and the case at bar. In practical terms a successful prosecution of this action will do no more than increase the estate assets.

■ There is a danger of overanalysis of the issues presented. The crux of the matter which should not be forgotten is that bankruptcy jurisdiction as such is not intended as a method of bringing state claims into a federal forum. Rather, and recognizing the significant interplay between state law and bankruptcy issues, federal courts acting in the bankruptcy context should deal with state law only to the extent such is *necessarily* and directly implicated by the bankruptcy issues. This appears to be the theme of *Marathon,* supra, 458 U.S. at p. 71, 102 S.Ct. at 2871:

"the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages."

The adoption in the bankruptcy amendments of the specific "core" terminology of *Marathon* evinces an intent, as Judge McGuire held, to maintain this careful distinction between specific bankruptcy proce-

dural issues and routine state law claims which happen to have a bankruptcy connection.

■ Judge McGuire recommended that this Court abstain from further involvement in this case

"[b]ecause the debtor's reorganization plan has been confirmed and its reorganization case, for all intents and purposes, is nearly complete [and because] the relationship of the reorganization case to this adversary proceeding [is] too attenuated to warrant further federal involvement." *In Re Nanodata, supra,* at p. 343.

Abstention would be mandatory under 28 U.S.C. § 1334(c)(2) except that the statute is prospective and this case was pending as of its enactment. However, under 28 U.S.C. § 1334(c)(1) a district court *may* abstain "in the interest of justice, or in the interest of comity with State Courts or respect for State law". It need hardly be said that failure by this Court to abstain would be substantially inconsistent with its analysis of the jurisdictional questions herein. Because this Court will affirm Judge McGuire's decision in all respects and follow his recommendation to abstain from taking jurisdiction, it is unnecessary to address other issues that have been raised. Accordingly, the August 27, 1985 decision of Judge McGuire is hereby ORDERED affirmed. It is hereby further ORDERED that this Court shall not entertain further proceedings in these actions consistent with the abstention provision in 28 U.S.C. § 1334(c)(1).[8]

**8.** The recent decision in *Commodity Futures Trading Com'n v. Schor ("Schor"),* — U.S. —, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), has prompted letter-briefs from the parties and merits brief discussion. Predictably it is asserted by each party that *Schor* supports its position in this case. *Schor,* however, resting as it does on very specific circumstances, distinct from the case at bar, can hardly be said to provide clear guidance on the issues herein. To the extent it does provide such guidance, it must be viewed as providing support for Judge McGuire's and this Court's conclusions. *Schor* involves analysis of the appropriate power of the Commodity Futures Trading Commission ("the CFTC") un-

der the Commodity Exchange Act ("the CEA"), 7 U.S.C. § 1 *et seq.,* and essentially holds that the CFTC's assumption of jurisdiction over common law counterclaims does not violate Article III of the United States Constitution. The United States Supreme Court makes very clear that the holding is narrow. For example, it states:

"The CFTC * * * deals only with a 'particularized area of law,' *Northern Pipeline, supra,* 458 U.S., at 85, [102 S.Ct. at 2878] * * * whereas the jurisdiction of the bankruptcy courts found unconstitutional in *Northern Pipeline* extended to broadly 'all civil proceedings arising under title 11 or arising in or

related to cases under title 11.' 28 U.S.C. § 1471(b) (quoted in *Northern Pipeline,* 458 U.S., at 85 [102 S.Ct. at 2878] * * *) (emphasis added)." *Schor, supra,* 106 S.Ct. at 3258–3259.

Moreover, it is noted:
"It also bears emphasis that the CFTC's assertion of counterclaim jurisdiction is limited to that which is necessary to make the reparations procedure workable." *Id.* at 3260.

The narrowness of the decision (that it is the exception and not the rule), the differences between the CEA and the Bankruptcy Act and the fact that *Schor* hinged on the choice of forum available to the parties, convinces this Court that *Schor* is not at odds with its reasoning herein.