**Raymond K. HOFFMAN, Plaintiff,**

v.

**Elizabeth ROBERTO, Walter L. Wittenberg, Durwood Young, Lawrence Parrott, Kevin Cash, William A. Nolan, Michael L. Fayette, Nancy Loomis, Lonnie Wilson, Richard Nelson, James Curcio, Jackie Presser, and International Brotherhood of Teamsters, Warehousemen, Chauffeurs and Helpers of America, Individually, Jointly and Severally, Defendants.**

**Raymond K. HOFFMAN, Plaintiff,**

v.

**Elizabeth ROBERTO, Walter L. Wittenberg, Durwood Young, Lawrence Parrott, Kevin Cash, William A. Nolan, Michael L. Fayette, Nancy Loomis, Lonnie Wilson, Richard Nelson, James Curcio, Jackie Presser, and # 44 International Brotherhood of Teamsters, Warehousemen, Chauffeurs and Helpers of America, Individually, Jointly and Severally, Defendants.**

Nos. K84–559, K85–101.

United States District Court,
W.D. Michigan, S.D.

March 24, 1988.

Gruel, Mills, Nims & Pylman by J. Clarke Nims, Grand Rapids, Mich., for plaintiff.

Climaco, Climaco, Seminatore & Lefkowitz, Co., L.P.A. by John Climaco, Dennis Wilcox, John Webster, Cleveland, Ohio, Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, by Frederick Perillo, Milwaukee, Wis., Pinsky, Smith & Soet by H. David Soet, Grand Rapids, Mich., for defendants Presser and Teamsters.

Warner, Norcross & Judd by John Tully, Robert Skilton, Grand Rapids, Mich., for defendants Roberto, Wittenberg, Young, Parrott, Cash, Fayette, Loomis, Wilson, Nelson and Curcio.

Wheeler, Upham, Bryant & Uhl by Gary A. Maximiuk, Grand Rapids, Mich., for defendant Nolan.

## OPINION

ENSLEN, District Judge.

This case is before the Court on defendant Jackie Presser's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Jurisdiction in this matter is based upon 28 U.S.C. § 1334(b) which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to causes under title 11." Presser argues that, because this case involves neither the debtor nor the bankruptcy estate, the Court lacks subject matter jurisdiction to hear this case. Plaintiff argues that the case "arose in" a title 11 case, and that the Court therefore has jurisdiction.

### Facts

The plaintiff, Raymond K. Hoffman, was president of Tucker Freight Lines, Inc. ("Tucker"), a trucking firm, from March, 1983 until June 24, 1984. In September, 1983 Tucker filed a voluntary petition under Chapter 11 of the Bankruptcy Act in the bankruptcy court for the Western District of Michigan. The bankruptcy action is still pending in that court. Following the commencement of the Chapter 11 proceedings, Hoffman lost his employment in the trucking industry. In his complaint, he alleges causes of action for defamation, malicious prosecution, abuse of process and tortious interference with advantageous business relations against the members of the Official Unsecured Creditors' Committee in the bankruptcy action. Hoffman also alleges causes of action against defendant Presser and the International Brotherhood of Teamsters, Warehousemen, Chauffeurs and Helpers of America ("the Union") for defamation and for tortious interference with advantageous business relations.

The allegations against Presser and the union center around a telex sent under Presser's name on behalf of the union, to certain union locals whose members were employed by Tucker. That telex stated that certain improprieties in the management of Tucker led the bankruptcy judge to appoint a trustee to supervise Tucker's operations. The telex listed twelve reasons, or "factors," which purportedly convinced the bankruptcy judge to appoint a trustee. Many of these actions, if taken, might be considered improper by persons in the trucking industry. The statements included in the telex which could be capable of a defamatory interpretation are: (1) that Central Transport, a competitor of Tucker, exercised actual control over Tucker's operations; (2) that Tucker diverted certain of its accounts to Central Transport; and (3) that Tucker closed down its operations but retained nonunion management personnel with no work to perform. Although many of the allegations in the telex refer to Tucker, and not to Hoffman, this Court has already held that the telex could reasonably be interpreted to refer to Hoffman and that portions of the telex are capable of a defamatory interpretation. *See*, Opinion of October 22, 1987, 85 B.R. 406 at 411–12. Hoffman's claim for tortious interference with advantageous business relations alleges that Presser and the union distributed this telex to persons other than union members for the purpose of hamper-

ing Hoffman's search for a new job in the trucking industry. In essence, Hoffman asserts that Presser and the union "blacklisted" him from the trucking industry by threatening potential employers with labor disputes and other unpleasant consequences if they chose to employ Hoffman.

This Court has already considered the merits of Hoffman's claims on several occasions. Most recently, it denied summary judgment to Presser and the Union, holding that Hoffman had established the existence of genuine issues of material fact with respect to both causes of action. *See,* Opinion of October 22, 1987, 85 B.R. 406. Although I feel that Hoffman's substantive claims have merit, and I agree with the plaintiff's argument that this motion is untimely and made at this point for purely strategic and arguably unethical reasons, Presser's objection to the Court's jurisdiction is well taken. After considering the proffered basis for federal jurisdiction, I find that the Court lacks subject matter jurisdiction. I will, however, decline to dismiss the case. Instead, I will remand it to the St. Joseph County Circuit Court in St. Joseph County, Indiana. Defendants removed our case number K85–101 from that court to the Northern District of Indiana, arguing that jurisdiction existed under the very statute now under consideration. Since they, and not plaintiff, are responsible for the improper removal of this action, remand is the only appropriate response to their motion. *See,* 28 U.S.C. § 1447(c).

*Discussion*

1. *Jurisdiction under § 1334(b).* As I indicated above, jurisdiction in this case was based upon 28 U.S.C. § 1334(b), which grants the district court jurisdiction to decide cases "arising in or related to" bankruptcy cases. Although it is clear from the facts of this case that plaintiff's causes of action have a factual connection to Tucker's pending bankruptcy action, I am constrained by the law to find that this case does not "relate to" that action within the meaning of 1334(b).

As Presser is quick to point out, federal courts are courts of limited jurisdiction and have no jurisdiction except as prescribed by Congress pursuant to Article III of the Constitution. *See, e.g., Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Where subject matter jurisdiction is lacking, the federal court has no power to proceed, regardless of the waste of judicial resources attendant upon that finding. *Memphis American Federation of Teachers Local 2032 v. Board of Education,* 534 F.2d 699 (6th Cir.1976). It is also axiomatic that the lack of subject matter jurisdiction is a defect which may be raised at "any and all stages of the proceedings, even after judgment." *Stone v. William Beaumont Hospital,* 782 F.2d 609, 613 (6th Cir.1986). Since the lack of subject matter jurisdiction is a non-waivable defect, and the parties may not confer jurisdiction upon the court by consent, a motion to dismiss brought on this ground is always timely and must be addressed by the court. *Ambrose v. Welch,* 729 F.2d 1084 (6th Cir.1984); *Holland v. Commissioner of Internal Revenue,* 728 F.2d 360 (6th Cir.1984); *Detroit, Toledo and Ironton Railroad Co. v. Consolidated Rail Corp.,* 727 F.2d 1391 (6th Cir.1984). A defendant does not waive his right to object to the federal court's jurisdiction by removing a case. *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *Television Reception Corp. v. Dunbar,* 426 F.2d 174 (6th Cir.1970). Plaintiff's first argument, that the motion should be denied because it is untimely, is thus easily rejected.

The question of whether this case "relates to" a bankruptcy action is much more difficult. Although some circuits have adopted a highly restrictive interpretation of § 1334(b), *see, Pacor Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984), the Sixth Circuit rejected a narrow interpretation of that statute in *In re Salem Mortgage Co.,* 783 F.2d 626 (6th Cir.1986). *Salem Mortgage* involved a class action, brought by the Attorney General of Michigan, against a bankrupt corporation, alleging that the corporation had defrauded many of its custom-

ers. The bankruptcy court later approved a proposed settlement of the class action, but the district court declined to enter the order on the ground that it lacked subject matter jurisdiction over the controversy. *Id.* at 631. The Sixth Circuit reversed, holding that "Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." *Id.* at 634. The Court distinguished cases, such as *Pacor*, from other jurisdictions by noting:

> Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction "only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate...." *In re General Oil Distributors, Inc.*, 21 B.R. 888, 892 n. 13 (Bankr. E.D.N.Y.1982). Another test finds jurisdiction "whenever 'the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy.' " *Id.* (citing *Mazur v. U.S. Air Duct Corp.*, 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981)) (emphasis in original). Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws.

*Salem Mortgage*, 763 F.2d at 634. While the Sixth Circuit clearly explains the standard I am *not* to adopt, it is less clear about the standard I should use in deciding such cases. *Salem* itself strikes me as a relatively easy case, since the assets and business of the bankrupt corporation were directly at issue. The case at hand is much less clear, however, because the connection between Hoffman's causes of action and the bankruptcy estate is more remote. Although the Sixth Circuit has clearly rejected the narrow reading of § 1334(b) urged by Presser in his motion, and although "a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding" is not necessary, *Salem Mortgage*, at 635, I find that I must dismiss this case because I can find no connection between the bankrupt estate and the case at hand.

Whatever is resolved by *Salem Mortgage* and its progeny, it appears clear to the Court that no case has accepted the argument advanced by plaintiff, that a factual nexus between the civil proceeding and the bankruptcy case is sufficient to confer jurisdiction upon the Court. For example, in *In re Maislin Industries, U.S., Inc.*, 75 B.R. 170 (Bankr.E.D.Mich.1987), the court held that it lacked subject matter jurisdiction to consider a claim brought on behalf of the debtor against one of its former customers for alleged underpayments of transportation charges. Maislin, the debtor, sought to recover the underpayments from Certified Brokerage Systems, Inc., a former customer. Certified brought a claim for indemnity against AT & T, alleging that AT & T, as the shipper, was ultimately liable to the debtor for underpayment of the transportation charges. The court concluded that "the resolution of Certified's claim against AT & T would have no effect upon the Maislin bankruptcy" because AT & T's liability to Certified had no bearing upon Certified's liability to Maislin. Relying on *Salem Mortgage*, the court held that it lacked subject matter jurisdiction to consider the controversy between Certified and AT & T. *Id.* at 172.

Similarly, in *National City Bank v. Coopers & Lybrand*, 802 F.2d 990 (8th Cir. 1986), the court held that bankruptcy jurisdiction was lacking where a creditor sought to recover on a professional malpractice claim against the debtor's accountants. The debtor held security interests in a related corporation's accounts receivable. The accountants failed to discover that the security interests had not been properly perfected. The creditors pursuing this claim held notes secured by the debtor's interest in the accounts receivable. Since the outcome of the litigation between the creditor and the accountants would not affect the bankruptcy estate, the Eighth Cir-

cuit held that the district court lacked subject matter jurisdiction to consider that claim.

Although the Sixth Circuit has rejected the restrictive interpretation of bankruptcy jurisdiction adopted by the Eighth and Third Circuits, *see, Salem Mortgage*, at 634–35, it seems certain that a factual nexus between the bankruptcy action and the civil proceeding at issue is insufficient to confer jurisdiction upon the Court. As one court recently noted, "Matters 'arising in or related to' a case under Title 11 are all matters having a sufficient effect upon the bankruptcy estate to warrant the exercise of jurisdiction. The test for this type of matter is whether the outcome of the proceedings could have an effect on the administration of the estate." *Wayne Film Systems v. Film Recovery Systems*, 64 B.R. 45, 49 (N.D.Ill.1986). Even utilizing this relatively broad standard for federal jurisdiction, I find that the Court lacks bankruptcy jurisdiction in this case. The only connection to the bankruptcy proceeding present here is a factual one. The statements alleged to be defamatory were made during the pendency of a bankruptcy proceeding and concerned certain actions by the debtor and the bankruptcy judge. But the debtor is not a party to this case, nor could its bankruptcy estate be in any way affected by the outcome of the dispute between Hoffman, a former employee of the debtor, and Presser, the president of the union whose members are also former employees of the debtor. Tucker may also have been harmed by Presser's statements, but it will have to pursue that cause of action itself.

I must say that I am sorely tempted to find jurisdiction in this matter. The facts of this case center entirely around a bankruptcy proceeding. The case would not be in existence, in all likelihood, if Tucker had not filed its voluntary petition. As a practical matter, this case is "related to" a bankruptcy proceeding. However, that factual nexus appears to be insufficient to justify the exercise of bankruptcy jurisdiction as the law now stands. If an action by a creditor seeking indemnification in an action brought by the debtor has an insuffi-

cient connection to the bankruptcy proceeding to confer jurisdiction, *see, In re Maislin Industries, U.S., Inc.*, 75 B.R. 170 (Bankr.E.D.Mich.1987), then I can see no rational basis for exercising jurisdiction in this matter, which has an even more tenuous legal connection to the pending bankruptcy. Hoffman's potential recovery from Presser could not benefit or harm the bankruptcy estate. Nor are principles of bankruptcy law important to determining the merit of Hoffman's claims. Finally, I cannot see how the outcome of this case could affect the administration of the bankruptcy proceeding, because Presser has little, if any, connection with that matter.

■ Plaintiff argues, in the alternative, that this case "arises under" or "arises in" a bankruptcy proceeding, as opposed to being "related to" that proceeding. Again, I find the argument to be logically appealing, but legally untenable. In *In re Consulting Actuarial Partners, Ltd. Partnership*, 72 B.R. 821, 828 (Bankr.S.D.N.Y. 1987), the court explained that a civil proceeding would "relate to" a bankruptcy proceeding but not "arise under" or in that proceeding where:

> the right to relief in the adversary proceeding [does] not depend upon the application or construction of bankruptcy law as expressed in Title 11, although the outcome of the adversary proceeding [will] have an effect on the estate being administered in the bankruptcy court. The debtor's adversary proceeding in the instant case does not depend upon the application of bankruptcy law, although the outcome will affect the administration of this case. Hence, it is "related to" this Title 11 case, although it does not "arise under" or "arise in" a Title 11 case.

*See also, National City Bank*, 802 F.2d at 994; *In re Nanodata Computer Corp.*, 74 B.R. 766, 770 (W.D.N.Y.1987) ("the linchpin to deciding whether a cause of action arises under Title 11 or arises in a case under Title 11 is the underlying nature of the cause of action itself and not merely the importance of that cause of action to the debtor or its creditors."); *Wayne Film*

*Systems,* 64 B.R. at 49 ("A civil proceeding arising 'under' Title 11 means a cause of action created by Title 11, or administrative matters involving no third party (that is the debtor and trustee)."); *Farmers Home Administration v. Farmers State Bank of Hosmer,* 68 B.R. 282, 284 (D.S.D.1986) (cases arising under Title 11 are "core proceedings" within the meaning of 28 U.S.C. § 157). The definition of an action "arising under" the Title 11 is thus more limited than that of actions "related to" a bankruptcy proceeding. Since the plaintiff's cause of action in this case rests solely upon the common law of torts and not upon any principles of bankruptcy law, it is clear that jurisdiction cannot be founded upon this argument.

■ The same analysis would apply to defeat jurisdiction over the claims relating to the remaining defendants. These defendants are the Official Unsecured Creditor's Committee ("Creditor's Committee") in Tucker's bankruptcy action. Plaintiff alleges causes of action against the Creditor's Committee for defamation, malicious prosecution, abuse of process and intentional interference with advantageous relations, all arising from a complaint for injunctive relief and request for temporary restraining order filed by the Creditor's Committee against both Tucker and plaintiff in the bankruptcy action. The Creditor's Committee eventually withdrew this complaint, after it became clear that the factual allegations upon which it was based were incorrect. Plaintiff argues that the allegations of this complaint were broadcast throughout the trucking industry, preventing plaintiff from finding subsequent employment in that industry.

Again, the only nexus between the case against the Creditor's Committee and the bankruptcy action is factual. Plaintiff complains of certain statements and actions taken by the Creditor's Committee in their official capacity in that action. However, there is no claim, nor could there be, that a favorable result for plaintiff would in any way influence the administration of the bankruptcy case. *Wayne Film Systems,* at 49. This action does not involve the debtor, nor would recovery be had from the bankruptcy estate. Resolution of Hoffman's claims against the Creditor's Committee would not necessarily expose the Creditor's Committee to liability toward the debtor, nor would it affect any other firm's liability to Tucker. *In re Maislin,* 75 B.R. At 172. Finally, principles of bankruptcy law do not govern the substantive elements of plaintiff's claims. *In re Nanodata Computer Corp.,* 74 B.R. 766, 770 (W.D.N.Y.1987). Thus, the Court concludes that it lacks subject matter jurisdiction over the plaintiff's claims against the Creditor's Committee.

■ 2. *Plaintiff's Request for Rule 11 Sanctions.* The next question to consider is whether the Court should award sanctions under Federal Rule of Civil Procedure 11 for Presser's failure to raise this argument at an earlier date. Hoffman requests costs, expenses and attorney fees from the defendant, arguing that Presser has "pursu[ed] a litigation strategy of delay and [concealed] until the eve of trial the fact that the court was without power to hear this action." Plaintiff's Response at 4. While I agree with plaintiff that Presser's motion could and should have been brought at an earlier date, and while I suspect that strategic considerations motivated the untimely filing of this motion, I cannot award sanctions on that basis. First, it is clear that Presser never actively concealed his objections to the Court's jurisdiction over this matter, since he raised that defense in his pleadings, although he never explained to the Court the rationale behind those averments. Second, I cannot find that counsel's actions were objectively unreasonable, since the motion is well-grounded in fact and in law. *See, Invst Financial Group, Inc. v. Chem–Nuclear Systems, Inc.,* 815 F.2d 391 (6th Cir.1987). While it is true that counsel have a duty to deal openly and honestly with the Court, a party has no particular duty to raise the defense of lack of jurisdiction at an early date. *Diluigi v. Kafkalas,* 437 F.Supp. 863, 869–70 (M.D.Pa.1977). Similarly, there is no basis for concluding that this motion was brought to delay the progress of this litigation. Rather, its obvious effect has been to

hasten the termination of this litigation, at least as far as this Court is concerned. Finally, the full blame for this Court's belated realization that it lacks jurisdiction over this case cannot rest with the defendant, since the Court has a duty to inquire into its own jurisdiction, even if the parties fail to raise the issue. *See e.g., Ambrose v. Welch,* 729 F.2d 1084 (6th Cir.1984). While it is clear that the Court's extended involvement with this case has been a colossal waste of time and judicial resources, it is also clear that much of that time and effort could have been saved had the Court inquired more closely into the basis of its jurisdiction. Therefore, I find that Rule 11 sanctions against the defendant would be inappropriate and will deny plaintiff's motion for those sanctions.

■ 3. *Remand under 28 U.S.C. § 1447(c).* What remains to be decided, however, is the proper response to defendant's motion—whether the motion to dismiss ought to be granted, or whether the case ought to be remanded to the state court from which it came. This case is a consolidation of two cases brought by the plaintiff against the present defendants. Hoffman filed action number K85–559 in the Western District of Michigan. He filed action number K85–101 in Saint Joseph County Circuit Court, in Saint Joseph County, Indiana. All defendants removed number K85–101 to the Northern District of Indiana on February 25, 1985, arguing that federal jurisdiction existed under 28 U.S.C. § 1334(b). Presser now admits that the petition for removal was improper, in that the federal court never had jurisdiction over this case under that statute. On March 15, 1985, defendants moved to consolidate both cases, which motion was granted by the court on June 25, 1985. Thus, we have one action, which began as two separate cases, one filed in state court and removed to federal court, the other filed originally in federal court.[1] Since the cases have been consolidated, the Court will treat them as one case for the purposes of this motion.

The resolution of this motion is governed by 28 U.S.C. § 1447(c), which provides in relevant part as follows:

If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case.

This statute, by its terms requires that the Court remand this case rather than dismiss it, as Presser suggests. Removal was improper since, as he points out, the proffered basis for federal jurisdiction was in error. The state court in Indiana would have subject matter jurisdiction over plaintiff's common law tort claims. Thus, remand is appropriate pursuant to section 1447(c). *See, e.g., Cook v. Georgetown Steel Corp.,* 770 F.2d 1272 (4th Cir.1985); *Gwinn Area Community Schools v. State of Michigan,* 741 F.2d 840 (6th Cir.1984) (remand not appropriate where state court never had jurisdiction over claim); *Deats v. Joseph Swantak Inc.,* 619 F.Supp. 973 (N.D.N.Y.1985) (remand appropriate where state court would have jurisdiction to decide claim).

My decision is further buttressed by the Supreme Court's recent decision in *Carnegie–Mellon University v. Cohill,* —— U.S. ——, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). In that case, the Court considered whether a district court could remand pendent claims to state court after all properly removed federal claims had been dismissed.

---

**1.** I note that one of the arguments advanced by defendants in favor of consolidation was that the claims raised in the state court complaint (No. K85–101) were identical to those raised in the federal complaint (No. K85–559). Upon a review of the complaints, it appears that this argument was well taken. Thus, even if remand of the action originally filed in federal court is improper, remand of the action filed in state court is not, and will accomplish exactly the same goal as a remand of the entire, consolidated case. For purposes of procedural clarity, I will remand the entire action, since the amended complaints filed after remand relate to both actions. I fail to see how this result could prejudice any party, since the two actions are, for all practical purposes, one.

The Court affirmed the district court's decision to remand rather than to dismiss. In so holding, the Court noted that several factors should influence a district court's decision in such cases:

[A] remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case. In such a case, a dismissal will foreclose the plaintiff from litigating his claims. This consequence may work injustice to the plaintiff: although he has brought his suit in a timely manner, he is time-barred from pressing his case ... The preclusion of valid state-law claims initially brought in a timely manner in state court [also] undermines the State's interest in enforcing its law. The operation of state statutes of limitations thus provides a potent reason for giving federal district courts discretion to remand, as well as dismiss, removed pendant claims.

*Id.* at ——–——, 108 S.Ct. at 620. Although that case dealt with pendant claims, and not with an improperly removed action, the policy considerations discussed by the Court apply with full force to this case. Further, the Court's expressed concern over forum manipulation by plaintiffs can equally apply to defendants who manipulate federal jurisdiction and the removal power to accomplish their own strategic ends. *See, id.* at ——, 108 S.Ct. at 622 ("If the plaintiff has attempted to manipulate the forum, the court should take that behavior into account in determining [whether to remand a case]").

The equities of this case clearly mandate that it be remanded, as opposed to being dismissed. Defendants, and not plaintiff, are responsible for the appearance of this case on the federal court's docket. In all likelihood, plaintiff's claims would be time-barred if he were forced to re-initiate the case in state court. Moreover, the claims raised by plaintiff arise under state law, and the state courts have the greater interest in enforcing that law. Finally, if any party has attempted to engage in "forum manipulation," it is the defendants, who

sought to remove a matter essentially arising under state law to a federal forum. I thus find that remand is appropriate, for both equitable and legal reasons.

 Section 1447(c) authorizes the Court to award "just costs" whenever it appears that a case was "removed improvidently and without jurisdiction." That is exactly the situation here—defendants removed this action on the theory that it "arose in" a bankruptcy action. In fact, it did not, for the reasons discussed above. Thus, removal was improper and an award of costs, in favor of plaintiff and against all defendants, is appropriate. *See, Playtime Theaters, Inc. v. City of Renton,* 748 F.2d 527, 538 (9th Cir.1984); *Cornwall v. Robinson,* 654 F.2d 685, 687 (10th Cir.1981); *Nursefinders of Elmwood Park, Inc. v. Metropolitan Life Insurance Co.,* 109 F.R. D. 4 (N.D.Ill.1985) (award of costs appropriate where defendant knew or should have known at time of removal that federal court lacked jurisdiction); *Syms, Inc. v. IBI Security Services, Inc.,* 586 F.Supp. 53 (S.D.N.Y.1984). Although many courts have awarded attorney fees upon remanding an improperly removed case, I will decline to do so in this case. Section 1447(c) does not, by itself, authorize an award of fees. Courts have awarded attorney fees, under Rule 11, only where it is shown that removal was accomplished in bad faith. *See, Playtime Theaters,* 748 F.2d at 538 (declining award of fees where removal not shown to have been in bad faith); *Nursefinders,* 109 F.R.D. at 6 (declining to award fees except upon showing that removal accomplished for sole purpose of having federal court dismiss action). Since it appears that the defendants believed, in good faith, that federal jurisdiction existed when they removed this action, and since all parties have litigated this case under that assumption for at least two years, I find that an award of attorney fees would be improper.

*Conclusion*

To summarize, I find that defendant Presser's objection to the Court's subject matter jurisdiction over this action is well-taken. I further find that the Court lacks

subject matter jurisdiction over the claims against the remaining defendants. I will remand this action to the St. Joseph County Circuit Court in St. Joseph County, Indiana, since it appears that removal was improvidently sought, and that the Court lacks subject matter jurisdiction over the case. 28 U.S.C. § 1447(c). Finally, I will award costs associated with the removal and remand (in other words, all costs since the date of removal) to plaintiff, and against all defendants, since all defendants participated in the removal of this action. I will decline to award attorney fees to plaintiff since it does not appear that defendants removed this action in bad faith.