CAROL RUTH BOSWORTH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bosworth v. Commissioner
Docket No. 874-87.
United States Tax Court
T.C. Memo 1988-190; 1988 Tax Ct. Memo LEXIS 223; 55 T.C.M. (CCH) 748; T.C.M. (RIA) 88190; May 3, 1988. Carol Ruth Bosworth, pro se. Steven W. LaBounty, for the respondent. COUVILLION
MEMORANDUM FINDINGS OF FACT AND OPINION COUVILLION, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986. [1]
Respondent determined the following deficiencies and additions to petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Section 6653(a)(1)
Section 6653(a)(2)
1983
$ 1,110.59
$ 55.53
*
1984
$ 1,166.00
$ 58.30 **
By stipulation, *226 respondent conceded several adjustments in the notice of deficiency and, at trial, orally conceded several other adjustments. Additionally, in the stipulation, respondent conceded petitioner's entitlement to Schedule A interest deductions in excess of amounts petitioner claimed on her 1983 and 1983 income tax returns. At trial, petitioner asserted a claim for a bad debt deduction for 1984. As a result of respondent's concessions, petitioner orally moved during the trial, pursuant to section 6512(a) and (b), to amend her pleadings to claim an overpayment of taxes for 1983 and 1984. The remaining issues for decision are: (1) Schedule A, miscellaneous deductions; (2) Schedule A, contributions deductions; (3) Political contribution credits; (4) Residential energy credit for 1983; (5) additions to tax under section 6653(a)(1) and (2); and (6) the bad debt deduction claimed by petitioner for 1984. [2]
*227 Some of the facts were stipulated and are so found. The stipulation of facts and exhibits annexed thereto are incorporated herein by reference. For purposes of convenience, the Court's findings of fact and opinion have been consolidated. At the time the petition was filed, petitioner's legal residence was St. Louis, Missouri. As to all issues, petitioner bears the burden of proof. Respondent's determinations in the notice of deficiency are presumed correct. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). With respect to the Schedule A, miscellaneous deductions, the following tables show the amounts claimed by petitioner on her returns, the amounts allowed in the notice of deificiency, the amounts conceded by respondent at trial, and the amounts at issue: 1983:
Claimed
Allowed in
Conceded by
Amount
Item
on Return
Stat. Notice
Respondent
at Issue
Union & Profes-
sional dues
$   221.00
$ 216.00
$ 5.00
-0-
Tax return prepara-
tion fee
74.56
50.00
-0-
$  24.56
On job needs for work
495.76
-0-
-0-
495.76
Inspection trips for
investment property
365.10
-0-
-0-
365.10
Toll calls in regard to
investment property
12.00
-0-
-0-
12.00
Totals
$ 1,168.42
$ 266.00
$ 5.00
$ 897.42
1984:
Union & profes-
sional dues
$   305.00
-0-
$ 305.00
-0-
Tax return prepara-
tion fee
50.00
-0-
50.00
-0-
On job needs for work
764.77
-0-
-0-
$   764.77
Inspection trips for
investment property
518.88
-0-
-0-
518.88
Mileage, postage & phone
for tax preparation
24.56
-0-
-0-
24.56
Totals
$ 1,663.21
-0-
$ 355.00
$ 1,308.21
*228 All of the amounts at issue were disallowed by respondent for lack of substantiation. Petitioner was a sales clerk for The Kroger Company, a national supermarket chain. The item "On Job Needs For Work" was comprised of several expenses petitioner claims for incurred: Cleaning uniforms she was required to wear at work, hand cream to faciliate her handling of currency as a sales clerk, foot pads to stand on at work, and support hosiery. The foot pads and hosiery, petitioner claimed, were necessary to alleviate a back condition. [3]
At trial, petitioner had virtually no records to support the $ 495.76 and $ 764.77 at issue. Her only documentary evidence consisted of a few store receipts totaling approximately $ 32, which appear *229 to have been for hosiery and unidentified drugs. Petitioner's explanation was that most of her records were destroyed when her home flooded in early 1983; however, she offered no explanation for her lack of records following the flood. Without passing upon the question whether the clothing petitioner was required to wear at work qualified as uniforms, thus allowing petitioner a deduction for her expenses in cleaning the uniforms, [4] or whether the other items in the category of "On Job Needs For Work" were properly incurred in connection with and as ordinary and necessary expenses of her employment, the evidence presented by petitioner to establish that she in fact incurred such expenses fell woefully short of the degree of proof necessary to convince this Court that she incurred such expenses. As such, the Court sustains respondent on this category of expenses. For 1983 and 1984, petitioner claimed a Schedule A miscellaneous deduction of $ 74.56 each year for income tax assistance, consisting of $ 50 to her income tax preparer, phone calls to him, and mileage. Petitioner testified she lived 28 miles *230 from her preparer and made two trips each year to his office for the preparation of her returns. Her testimony was corroborated by the preparer who testified at trial. Respondent conceded the $ 50 fee paid to the preparer but disallowed the $ 24.56 related expenses. The Court is satisfied that petitioner sustained her burden of proof with respect to the $ 244.56 for travel and telephone and, accordingly, sustains petitioner on this item for each year. Petitioner owned 40 acres of land which she and her husband had acquired several years previously for purposes of starting a tree farm which never materalized. The property produced no income during the years in question and was located approximately 85 miles from petitioner's home. On Schedule A of her return for 1983, petitioner claimed a deduction of $ 365.10 for inspection trips to this property and $ 12 for long distance calls made with respect to the property. For 1984, petitioner claimed $ 518.88 for such trips. Section 212(1) and (2) allows a deduction of all ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held *231 for the production of income. Petitioner's evidence to substantiate these expenses was scant. Aside from her testimony, the only corroborating evidence she produced was a copy of her check register, which reflected a check of $ 122 issued to Dale Head. She produced no evidence to establish the number of trips she made to the property, the dates, or any bills reflecting the motel expenses she allegedly incurred on these trips. Petitioner clearly failed to substantiate these expenses and, on this record, respondent is sustained. [5]
*232 With respect to the Schedule A, Contributions deductions, this issue is posited in the same fashion as the Schedule A, Miscellaneous deductions: 1983:
Claimed
Allowed
Conceded by
Amount
Item
on Return
Stat. Notice
Respondent
at Issue
Church (cash)
$   921.00
$ 180.00
$ 150.00
$   591.00 Other charities
77.00
5.00
* 147.00 ** (75.00)
3% AGI for other
charities
659.55
-0-
-0-
659.55 Clothing
400.00
-0-
-0-
400.00 Totals
$ 2,057.55
$ 185.00
$ 297.00
$ 1,575.55 1984:
Church (cash)
$   629.00
-0-
* $ 402.00
$   227.00
Other listed charities
147.00
-0- ** 52.00
95.00
Other charities not
listed
756.00
-0-
-0-
756.00
Property contributions
412.90
-0-
-0-
412.90
Totals
$ 1,944.90
-0-
$ 454.00
$ 1,490.90
*233 As to the church contributions and other listed charities for 1983 and 1984, petitioner produced no canceled checks, receipts or other documentary evidence to substantiate the amounts claimed in excess of those allowed by respondent. She testified that the contributions were in cash and included contributions to the Nazarene Church and door-to-door solicitations at home and where she worked. With no more evidence than that, this Court is unable to allow petitioner any deduction in excess of the amounts allowed by respondent. Accordingly, respondent is sustained on these two items for 1983 and 1984. Petitioner and her return preparer testified that the "3% AGI for other charities" and "Other Charities not listed," in the amounts of $ 659.55 and $ 756, respectively, for 1983 and 1984, represented an arbitrary amount the preparer determined, based on 3% of petitioner's adjusted gross income, as a "catch all" for numerous, out-of-pocket contributions to various charities. This Court rejects such determination as authority for a charitable contribution deduction. since no substantiation was presented to support these amounts, respondent is sustained on this item for 1983 and 1984. *234 The final item, clothing and other properties, $ 400 and $ 412.90, respectively, for 1983 and 1984, represented property petitioner contributed in kind to the Salvation Army and the Missouri Federation of the Blind. Petitioner testified these contributions consisted of clothing, shoes, furniture, and other household items. She was not able to substantiate her contribution to the Salvation Army; however, she produced receipts for both years from the Missouri Federation of the Blind, totaling $ 450 for 1983 and $ 610 for 1984. These amounts were described on the receipts as the "value" of the property given. The receipts did not describe the property, except in general terms. A deduction for charitable contributions is allowed under section 170(a). Under section 1.170A-1(c)(1), Income Tax Regs., if the contribution is property other than money, the amount of the deduction is the fair market value of the property at the time of the contribution. Under section 1.170A-1(c)(2), Income Tax Regs., fair market value is the price at which the property would change hands between a willing buyer and a willing seller, with both informed as to the relevant facts and neither being under *235 any compulsion to buy or sell. The question is one of fact to be resolved from a consideration of all relevant evidence in the record. Jarre v. Commissioner,64 T.C. 183, 198 (1975). The Court is satisfied that Petitioner made contributions of property to the Missouri Federation of the Blind in 1983 and 1984; however, petitioner failed to establish exactly what property she gave, her cost of the property, or its fair market value, except the values indicated on the receipts, which the Court considers was most imprecise. Nevertheless, the Court is satisfied that petitioner did in fact make deductible charitable contributions to the Missouri Federation of the Blind during both years. Using our best judgment on the basis of this record, the Court concludes that the fair market value of the property contributed by petitioner to the Missouri Federation of the Blind in 1983 and 1984 was $ 100 for each year. Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930). The Court denies petitioner a deduction for contributions to the Salvation Army for lack of substantiation, and we decline to exercise our discretion to estimate any allowance because *236 the record simply does not provide any basis to do so. Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner,85 T. C. 731, 742-743 (1985). On her 1983 and 1984 returns, petitioner claimed credits against the tax of $ 50 each year under section 41(a), contributions to candidates for public office. [6] The credits were disallowed by respondent for lack of substantiation. At trial, petitioner presented no receipts, canceled checks, or other evidence to establish that she made any political contributions in 1983 or 1984. On this record, therefore, respondent is sustained on this issue. On her 1983 return, petitioner claimed a residential energy credit of $ 300 based on the following claimed energy conservation expenditures on her principal residence during 1983: $   375.00
Insulation
2,500.00
Storm windows or doors
100.00
Caulking, weatherstripping, and labor
$ 2,975.00
Total
*237 In the notice of deficiency, respondent disallowed all the energy conservation expenditures, for lack of substantiation, except $ 502.74 for storm windows. In the stipulation, respondent conceded an additional $ 726.86 for storm windows, leaving at issue $ 1,745.40. Section 44C [7] provides a tax credit to individuals for qualified energy conservation expenditures made to their principal residence. The credit is 15% of qualified energy conservation expenditures up to $ 2,0000. Insulation and storm windows are qualified energy conservation expenditures. Section 1.23-2(c), Income Tax Regs.; section 1.23-2(d)(4)(iv), Income Tax Regs.
At trial, petitioner presented several receipts evidencing purchase of various materials from a hardware and "do-it-yourself" store along with copies of several checks. The Court is satisfied that two of the receipts were altered to show a date of 1983 instead of 1982. The checks submitted by petitioner are not corroborated *238 with any statements or invoices; consequently, the Court is unable to conclude from the record whether these conservation expenditures supporting petitioner's claimed credit for 1983. Respondent, therefore, is sustained on this issue. Respondent determined additions to tax under section 6653(a)(1) and (2). Section 6653(a)(1) applies if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) applies only to that portion of an underpayment attributable to negligence or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). The Court is satisfied from the record that petitioner did not sustain her burden of establishing that these additions to tax were improper. The record establishes petitioner's callous disregard of the tax laws in, for example, claiming arbitrary charitable contributions based on a percentage of her adjusted gross income, or in submitting altered receipts in substantiation of claimed expenditures. Although *239 we accept petitioner's testimony that some of her records were destroyed when her home flooded, it is obvious that many of her claimed expenses could have been corroborated by other available evidence, which she failed to produce. Moreover, the storm damage in which petitioner claims her records were destroyed occurred in February 1983 -- early on in the two years in question with no explanation why records subsequent to February 1983 were not available. Respondent, therefore, is sustained on the additions to tax under section 6653(a)(1) and (2). At trial, petitioner claimed a bad debt deduction of $ 370.95 for 1984. The debt is evidenced by a canceled check by petitioner dated July 17, 1984, payable to Friedman Railroad Salvage Co. The check bears a notation "For Fran." Petitioner testified that "Fran" (who was not further identified) was a friend, whose home was destroyed by fire, and petitioner purchased furniture for her. Petitioner contends there was no donative intent on her part, that Fran was expected to reimburse petitioner the $ 370.95, and the debt was never repaid. Section 166(a) allows a deduction for any debt which becomes wholly or partially whorthless during *240 the taxable year. Under section 1.166-1(c), Income Tax Regs., only a bona fide debt which arises from a debtor-creditor relationship, based upon a valid and an enforceable obligation to pay a fixed or determinable sum of money, qualifies for the deduction. The obligation to repay must be unconditional and must be certain to become due at some future date. Birdsboro Steel Foundry & Machine Co. v. United States,78 Ct. Cl. 100, 3 F.Supp 640 (1933). Petitioner did not sustain the burden of establishing that a bona fide debt existed with "Fran." The only evidence was petitioner's testimony, with no identification of the debtor (other than the sobriquet "Fran"), or any acknowledgment by Fran of a debt. Even if a bona fide debt existed, petitioner failed to establish any identifiable event or series of events occurring in 1984 which would indicate that the debt, assuming one existed, became worthless that year rather than another year. See Dustin v. Commissioner,53 T.C. 491, 501 (1969), affd. 467 F.2d 47 (9th Cir. 1972). Petitioner, therefore, is not entitled to a bad debt deduction for 1984. Decision will be entered under Rule *241 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. 50% of the interest due on $ 886.00 ** 50% of the interest due on $ 1,166.00 ↩
2. Respondent conceded: (1) Allowance of a dependency exemption to petitioner for 1983 and 1984; (2) Schedule A, interest expenses for 1983 of $ 3,169.39 instead of $ 1,462.44 claimed on her return; (3) Schedule A, interest expenses for 1984 of $ 2,174.40 instead of $ 1,4188.29 claimed on her return. Other concessions by respondent are noted in the body of this opinion. ↩
3. Such expenses appear to be more in the nature of medical expenses, deductible under section 213, rather than as employee related expenses. The Court notes, however, that, for the two years in question, petitioner's medical expenses did not exceed five percent of her adjusted gross income, as required by section 213(a). Moreover, petitioner failed to establish that these items were in fact medical expenses. See section 1.213-2(h), Income Tax Regs.↩
4. See Yeomans v. Commissioner,30 T.C. 757, 767↩ (1958). 5. Petitioner testified the expenses were incurred in her attempts to sell the property and included motel and travel expenses for herself and potential purchasers she brought to view the property. In view of our finding that the expenses were not substantiated, we find it unnecessary to determine whether selling expenses can be considered as "ordinary and necessary," and whether such expenses bore "a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income," both of which are conditions for deductibility under section 212(1) and (2), and section 1.212-1(d), Income Tax Regs.↩
*. Consists of: $  52.00
United Way
50.00
Peter Popoff Evangelistic Assn., Inc.
45.00
700 Club
$ 147.00
** Respondent conceded petitioner's entitlement to the $ 75.00 shown. ↩
*. Consists of: $ 285.00
Shambach Revival
97.00
Peter Popoff Evangelistic Assn., Inc.
20.00
700 Club
$ 402.00
** United Way. ↩
6. Section 41(a) was redesignated as section 24(a) by section 471(c) of Pub. L. 98-369, 98 Stat. 826, July 18, 1984, effective for the taxable years beginning after December 31, 1983, and to carrybacks from such years. The Tax Reform Act of 1986, Pub. L. 99-514, section 112(a), 100 Stat. 2108, repealed section 24. ↩
7. Section 44C was redesignated as section 23 by section 471(c) of the Deficit Reduction Act of 1984, 98 Stat. 826. This change affected taxable years beginning after December 31, 1983, Deficit Reduction Act of 1984, 98 Stat. 847. ↩