T.C. Memo. 1997-3


UNITED STATES TAX COURT


JOEL BAKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 22599-94, 4270-95.        Filed January 2, 1997.


Joel Baker, pro se.

<u>James Thurston</u> and <u>Elizabeth Groenwegen</u>, for respondent.


MEMORANDUM OPINION


PANUTHOS, <u>Chief Special Trial Judge</u>:  These consolidated

cases were heard pursuant to the provisions of section

7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent determined

---

[1]  All section references are to the Internal Revenue Code
as amended, unless otherwise indicated.  All Rule references are
to the Tax Court Rules of Practice and Procedure.

the following deficiencies in, addition to, and accuracy-related penalties on petitioner's Federal income tax:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|-------------------|------------------------|
| [1]1990 | $2,437 | --- | $487 |
| 1991 | 2,951 | $414 | 590 |

[1] For 1990, the deficiency and penalty determined in the notice of deficiency were $2,130 and $426, respectively. The increased deficiency and penalty were claimed in respondent's amended answer that asserts that petitioner is not entitled to a dependency exemption for his daughter.

After concessions,[2] the issues remaining for decision are: (1) Whether petitioner is entitled to a dependency exemption for his daughter in 1990 and his mother in 1991; (2) whether petitioner is entitled to head-of-household filing status for 1991; (3) whether the claimed bad debt deduction in the amount of $5,200 for 1990 should be treated as a business bad debt or a nonbusiness bad debt; (4) whether petitioner is entitled to a $9,100 theft loss deduction for 1991; (5) whether petitioner is entitled to a $2,500 deduction for unreimbursed employee business expenses incurred in 1991; (6) whether petitioner is liable for

[2] With respect to 1990, petitioner has conceded that he is not entitled to a deduction in the amount of $12,000 for amounts withheld from his wages. For 1991, petitioner has conceded: (1) He is not entitled to a deduction for medical expenses claimed on Schedule A; (2) he may not claim his daughter, Jacqueline, as a dependent; (3) with respect to a claimed deduction for property taxes in the amount of $1,759, he is not entitled to a deduction of $845 (respondent concedes that petitioner is entitled to a deduction of $914); (4) with respect to a claimed deduction for unreimbursed employee business expenses in the amount of $3,200, he is not entitled to a deduction of $700; and (5) he is not entitled to claim a deduction for a casualty loss in the amount of $650.

an addition to tax under section 6651(a) for failure to file a timely return in 1991; and (7) whether petitioner is liable for negligence penalties under section 6662(a) for the years 1990 and 1991.

For the purposes of convenience, we have combined the findings of fact and discussion of pertinent legal issues. Some of the facts have been stipulated, and they are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of filing the petitions, petitioner resided in Berkeley, California.

We begin by noting that respondent's determinations are presumed correct, and petitioner bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Dependency Exemptions in 1990 and 1991

Petitioner is single, having been divorced from his former wife in 1972, and his daughter, Jacqueline, resided with him in 1990. Jacqueline was born on April 10, 1966. Petitioner's mother, Laverne Baker (Ms. Baker), resided with petitioner from January 1 to September 1, 1991. Ms. Baker, 80 years old during that year, was blind and suffered from Alzheimer's disease. Ms.

Baker received a total of $600 per month from the Federal Government and the State of California.

Section 151(c) allows an annual exemption amount for each dependent whose gross income for the taxable year is less than the exemption amount, or who is a child of the taxpayer and is a student who has not attained the age of 24 at the close of such calendar year. Sec. 151(c)(1)(A), (B)(ii). Dependents are generally defined as individuals who receive over half of their support from a taxpayer in the calendar year in which that taxpayer's taxable year begins. Sec. 152(a). Individuals listed under this general definition include both mothers and daughters. Sec. 152(a)(1), (4). To determine whether a taxpayer has furnished over half of an individual's support, there must be included the cost of food, shelter, clothing, medical and dental care, education, and the like. Sec. 1.152-1(a)(2)(i), Income Tax Regs. Support also includes any amount which that individual has contributed for his or her own support, including amounts ordinarily excludable from gross income, in whole or part, such as Social Security benefits. Sec. 1.152-1(a)(2)(ii), Income Tax Regs.

With respect to petitioner's claim that his daughter, Jacqueline, was his dependent in 1990, the record indicates that she earned $11,555 in wage income, an amount which exceeded the exemption amount for that year. Furthermore, although Jacqueline was a student, she reached age 24 during that year.

Consequently, petitioner is not entitled to claim his daughter as a dependent for 1990.[3]

With respect to petitioner's claim that he is entitled to a dependency exemption for his mother in 1991, petitioner must establish that he provided over half of her support for the year. Petitioner presented no documentary evidence and only vague oral testimony on this issue. Furthermore, the record indicates that Ms. Baker received Federal and State Government support, and resided with petitioner's sister for 4 months during the year. Petitioner has not met his burden of proving that he provided more than half of the support for his mother. Therefore, we sustain respondent on this issue.

Filing Status in 1991[4]

We now address the question of whether petitioner is entitled to head-of-household filing status for 1991. Based upon

_____

[3] Respondent first raised this issue in an amended answer. As such, respondent bears the burden of proof on this issue. Rule 142(a). Nevertheless, the facts in the record are clear that petitioner is not entitled to the dependency exemption. Accordingly, the burden of proof does not play a role with respect to this issue.

[4] Petitioner claimed head-of-household filing status on his 1991 return. In the notice of deficiency, respondent determined that petitioner, because he improperly claimed his daughter as a dependent, was not entitled to head-of-household filing status. Petitioner appears to have conceded both the dependency and filing status issues in his pretrial memorandum, and neither party mentioned the issue during trial. Under sec. 2(b)(1)(A)(i), however, the issue of whether a parent may claim an unmarried son or daughter as a dependent is not determinative of whether that parent is entitled to head-of-household filing status. Given that petitioner is pro se, we do not accept his apparent concession, which was based upon respondent's erroneous legal analysis.

evidence in the record, including a copy of his daughter's 1991 Federal income tax return, we find that petitioner's daughter was unmarried and resided with petitioner for more than one-half of the year. Under section 2(b)(1)(A), an unmarried individual may file a return as "head of household" if that individual maintains a household which constitutes for more than one-half of such taxable year the principal place of abode of an unmarried son or daughter of the taxpayer. Therefore, petitioner is entitled to head-of-household filing status for 1991.

Bad Debt Deduction in 1990

On several occasions from 1981 to 1991, petitioner loaned money to individuals, receiving interest-bearing notes in return. On January 19, 1990, petitioner loaned $5,296.70 to James C. Murphy, who died one month later without making any payments on the loan. Petitioner never collected on this debt, and claimed a bad debt deduction in the amount of $5,200 on his 1990 return.

Section 166(a) generally allows a deduction for any debt that becomes worthless during the taxable year. Bad debts may be characterized as either business bad debts or nonbusiness bad debts. Sec. 166(d). Section 166(d)(1)(B) provides that nonbusiness bad debts are deductible as short-term capital losses.

While petitioner claimed the $5,200 deduction as a business bad debt loss, respondent characterized the loss as a nonbusiness bad debt, thereby limiting petitioner's deduction to $3,000 for

the year.  Sec. 1211(b)(1).  Respondent concedes the validity and the amount of the loan, as well as its worthlessness as a bad debt.  The issue to be decided, therefore, is whether petitioner is entitled to claim the bad debt as a business bad debt.

Bad debts are properly characterized as business bad debts if they are incurred in connection with a trade or business of the taxpayer.  Sec. 166(d)(2).  Petitioner argues that he was in the trade or business of lending money.  During the year in issue, petitioner worked as a school counselor and reported wages from that activity.  Petitioner's 1990 income tax return does not reflect any other activity which would lead us to the conclusion that he was in the trade or business of lending money.  Based upon the record before us, we find that petitioner has failed to present sufficient evidence to establish that he is entitled to a deduction for a business bad debt.  Deely v. Commissioner, 73 T.C. 1081, 1096 (1980).  Therefore, we sustain respondent's determination that the loss in question constituted a nonbusiness bad debt.

## Theft Loss in 1991

Petitioner was divorced in 1972, and fell into arrears on child support payments to his former wife.  By September 21, 1987, however, petitioner had paid all amounts in arrearage.  Nevertheless, on January 29, 1988, petitioner's former wife obtained an ex parte order to withhold a portion of petitioner's wages at a rate of $500 per month until purported child support

arrearages of $13,780 were paid.  Petitioner commenced legal proceedings to contest the wage assignment.  On April 4, 1990, petitioner obtained a judicial order declaring the wage assignment void, and requiring his former wife to return $7,180 which had been paid pursuant to the original order.  Petitioner made attempts to find his former wife, but never filed suit seeking to collect the amounts she owed him.  On Schedule A of his amended return for 1991, petitioner deducted $9,100 as a theft loss attributable to amounts withheld from his paycheck "for child support * * * not owing".[5]

Individual taxpayers may deduct certain losses, including theft losses, sustained during the taxable year and not compensated by insurance or otherwise.  Sec. 165(a), (c)(3).  A taxpayer may deduct a theft loss in the year in which the loss is discovered, to the extent that the loss exceeds 10 percent of adjusted gross income.  Sec. 165(e), (h)(2).  The existence of a theft depends upon the law of the State where the purported theft occurred.  Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975).  California provides that a person commits theft when he or she "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[s] any other person of money".  Cal. Penal Code sec. 484(a) (West 1988).

---

[5]  Petitioner maintains that a total of $9,100 was withheld from his wages before payments finally ceased.

To meet his burden of proof on this issue, petitioner must establish that a theft occurred; i.e., that his former wife possessed felonious intent when she obtained the judicial order for the wage assignment. Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), affg. 61 T.C. 354 (1973). In this regard, respondent contends that because petitioner was not present when his former wife obtained the wage assignment order, and has presented no other evidence regarding his former wife's intent at that time, petitioner has not shown that the order was procured with fraudulent intent. Based upon the record before us, we find that petitioner has failed to prove that his former wife committed a theft under California law when obtaining the wage assignment order. We, therefore, sustain respondent on this issue.

Unreimbursed Employee Business Expenses in 1991

During the years in issue, petitioner was employed as a counselor in the Oakland Unified School District. One of petitioner's responsibilities as a counselor was to organize and raise funds for various events, including a school picnic for Bret Harte Junior High School, held on May 31, 1991. Petitioner was responsible for finding a caterer for the picnic and entered into an agreement, approved by the school administration, with Avalon Catering (Avalon). Funds could not be paid to the caterer until petitioner, the class secretary, and the school principal each signed a form authorizing disbursement of the funds.

According to petitioner, 1 or 2 days prior to the date of the picnic, he was advised that Avalon would not perform according to the agreement.[6]  Petitioner then entered into a new contract with A & S Catering (A & S).  Petitioner was informed by the principal of the school that she would not authorize the disbursement of funds to A & S.  Petitioner then paid $2,500 to A & S out of his own funds, and deducted the amount as an unreimbursed employee business expense on Schedule A of his income tax return.

With respect to the $2,500 paid by petitioner to A & S, we note that section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. Generally, the performance of services as an employee constitutes a trade or business.  Primuth v. Commissioner, 54 T.C. 374, 377 (1970).  In this regard, petitioner maintains that he may deduct the $2,500 as an ordinary and necessary expense.  The record, however, indicates that petitioner was aware that the school's principal disapproved of the expenditure before petitioner incurred the expense in question.  We are not persuaded that this expense, incurred with the knowledge that it would not be approved by his superiors, was ordinary and necessary to

_____

[6]  Documents in this record are inconsistent with petitioner's testimony.  Said documents could lead us to the conclusion that petitioner unilaterally terminated the contract with Avalon.  We need not, and do not, decide for purposes of this opinion whether petitioner was at fault or exactly what role petitioner played in the failure of Avalon to perform the catering services.

petitioner's employment. Therefore, we sustain respondent on this issue.

Addition to Tax for Failure To Timely File Under Section 6651(a)

Respondent determined that petitioner was liable for an addition to tax for failure to timely file a tax return for 1991. Generally, taxpayers failing to submit a timely return are subject to this addition to tax, unless they establish that the failure resulted from "reasonable cause" and not from "willful neglect". United States v. Boyle, 469 U.S. 241, 245-246 (1985). Petitioner filed his return for the 1991 tax year on December 28, 1993, but noted at trial that he was preoccupied with other matters at the time his return was due. The fact that a taxpayer is busy during the time that his or her return is due does not, by itself, establish reasonable cause for failing to timely file a return. Dustin v. Commissioner, 467 F.2d 47, 50 (9th Cir. 1972), affg. 53 T.C. 491 (1969). Therefore, we sustain respondent on this issue.

Accuracy-Related Penalty Under Section 6662(a)

For 1990 and 1991, respondent determined that petitioner is liable for the accuracy-related penalty provided under section 6662(a). The accuracy-related penalty is equal to 20 percent of any portion of an underpayment attributable to a taxpayer's negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). The term "negligence" includes any failure to do what a reasonable and ordinarily prudent person would do under

the same circumstances. <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985). The penalty does not apply to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith. Sec. 6664(c). Generally, respondent's determination imposing the accuracy-related penalty is presumed correct, and taxpayers bear the burden of proving that they are not liable for the accuracy-related penalty imposed by section 6662(a). Rule 142(a); <u>Tweeddale v. Commissioner</u>, 92 T.C. 501, 505 (1989). Respondent, however, bears the burden of proving petitioner's liability for an accuracy-related penalty with regard to petitioner's claim that his daughter was his dependent in 1990. See <u>supra</u> note 3.

With respect to 1990, we find that petitioner did not have a reasonable basis either for claiming his daughter as a dependent, or for characterizing his worthless note as a business bad debt. With respect to 1991, we conclude that petitioner did not have a reasonable basis for claiming a deduction for theft losses relating to amounts withheld from his wages by his former wife. Furthermore, petitioner offered no evidence to suggest that he had a reasonable basis for any of the conceded items which resulted in an underpayment. Accordingly, we sustain respondent's determination to this extent. However, we find that petitioner made reasonable attempts to comply with statutory requirements when claiming his mother as a dependent in 1991. Moreover, we find that petitioner had a reasonable belief that

expenses paid to A & S were sufficiently related to his employment to warrant a deduction.  Therefore, we conclude that the accuracy-related penalty is not applicable to the portion of the underpayment attributable to this adjustment.

To reflect the foregoing,

Decisions will be entered

under Rule 155.